(85 App. Div. 581.)

### BOYD v. DAILY et al.

(Supreme Court, Appellate Division, First Department. July 7, 1903.)

1. ATTORNEY AND CLIENT—COMPENSATION OF ATTORNEY.

    Where an agreement by an attorney with a client for compensation was made when the attorney was retained and before the services were rendered, and he died before settlement, it was not incumbent on his representative to show that the contract was fair and reasonable.

2. EVIDENCE—CONCLUSION OF WITNESS.

    In an action by plaintiff to recover a fund deposited for him, but on which defendant claimed a lien for services rendered by his intestate as an attorney under an agreement with plaintiff, a question to plaintiff, "Do you know of any lien given by you to anybody on the fund on deposit in favor of anybody?" called for a conclusion, and the answer was properly excluded.

3. WITNESSES—TRANSACTION WITH DECEDENT.

    The plaintiff was not a competent witness to testify to transactions with the decedent.

**4. ATTORNEY AND CLIENT—CONTRACT FOR COMPENSATION—CONSTRUCTION.**

A written agreement between an attorney and client for compensation recited that it was evidence of previous agreements, and these agreements related to several actions conducted by the attorney. The writing provided, as to one of these actions, that the attorney should receive a certain percentage for services up to and including trial, and stipulated for further amounts for each probable appeal and for retrial. *Held*, that the contract was not entire, but was severable, and, on the death of the attorney before complete performance, his representative could recover for the part performed, and was not limited to recovery on quantum meruit.

**5. SAME—PRIVILEGED COMMUNICATIONS—EVIDENCE.**

On an issue as to the reasonableness of an agreement for compensation of defendant as plaintiff's attorney, involving the question as to whether plaintiff understood the agreement, it appeared that witness, also an attorney, had offices connecting with the defendant, and sometimes assisted him with reference to plaintiff's affairs, and that plaintiff had sometimes talked with witness relative to such affairs when the defendant was absent. *Held*, that it was competent for witness to testify that plaintiff had once complained that defendant was not making the progress he should in view of the large compensation he was to receive, and that plaintiff had once spoken of giving defendant a mortgage to secure payment for services.

**6. SAME—COMPENSATION—AMOUNT.**

After an action had been decided adversely to plaintiff, his attorney had moved for a new trial on newly discovered evidence, without a case, and the motion was granted. Decedent was then substituted as plaintiff's attorney, under agreement that he should receive $569 for compensation. He defended the order for new trial on appeal therefrom, and on its reversal made and settled a case, and then secured an order for a new trial, but the case had not been tried when he died, and it was afterwards discontinued by an arrangement between the parties. *Held*, that decedent's representative was not entitled to recover the full amount of compensation agreed on.

**7. PAYMENT—EVIDENCE.**

Where the amount of plaintiff's indebtedness to defendant was in issue, involving the amount paid on account, a check drawn by plaintiff on the N. bank, payable to defendant's order, and indorsed by him "for deposit in the N. bank, to the credit of S.," raised the presumption of a payment by plaintiff to defendant.

**8. SAME.**

Plaintiff's note payable to defendant, and indorsed by him, with no other indorsement, raised a presumption of a payment to defendant by plaintiff, though it appeared that defendant had sometimes procured the discount of plaintiff's paper at defendant's bank and given plaintiff checks therefor.

**9. SAME—PAYMENT BY NOTES—DISCOUNT.**

Where defendant, by letters, invited payment on account by plaintiff by notes, and plaintiff sent notes, he was entitled to credit for the face value thereof, and defendant could not, after having the notes discounted, credit plaintiff merely with the proceeds.

Appeal from Special Term, New York County.

Action by Robert Boyd against the New York Security & Trust Company, and Lizzie H. Daily, administratrix, to recover a sum deposited with the trust company, and on which defendant Daily claims a lien. From a judgment for defendant Daily, plaintiff appeals. Modified.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Edward W. S. Johnston, for appellant.
L. E. Warren, for respondents.

LAUGHLIN, J. The plaintiff owned premises on the northwesterly side of Elm street and southwesterly side of Pearl street, and contracted to convey the same to the New York Life Insurance Company. There was an action pending against the plaintiff brought by David Boyd, individually and as administrator of the estate of Samuel Boyd, involving the title to these premises, in which a notice of pendency had been filed. As a condition of taking title, the insurance company insisted upon a cancellation of the lis pendens, and this was consented to by the attorney for the plaintiffs in that action, upon condition that the sum of $62,000 of the purchase price be deposited to abide the event of the action. It was deposited with the defendant trust company on the 21st day of July, 1896. Henry Daily, Jr., was attorney for this plaintiff in that action. He died on the 25th day of October, 1900. On the 28th day of January thereafter, the action was duly discontinued by stipulation of the attorneys, another attorney having been substituted for this plaintiff, and by the stipulation of discontinuance the trust company was authorized to pay the fund, together with the accumulated interest, to the plaintiff. The executrix of the deceased attorney served a notice upon the trust company claiming a lien upon the fund, for Daily's services, by virtue of an express agreement between him and the plaintiff. The trust company, in these circumstances, declined to pay over the money to the plaintiff, and he brought this action to recover the same, making Daily's executrix a party defendant. The trial court decided that Daily's executrix had a lien upon the fund for the sum of $38,743.66, and interest from the 4th day of March, 1901, and the judgment directs payment of that amount to the executrix, together with costs and an extra allowance, and directs that the balance be paid to the plaintiff. The validity and amount of this lien are the questions presented by the appeal.

Upon the trial the executrix proved an agreement in writing between the plaintiff and her testator, executed and acknowledged before a notary public on the 13th day of July, 1899. This agreement expressly provided that the deceased attorney should have a lien upon this fund for his services in twelve specified actions involving the title to real estate, in which this plaintiff was a party plaintiff in some and a party defendant in others. The agreement expressly recited the compensation that the attorney was to receive for his services in each of these actions, nine of which at that time had been disposed of favorably to this plaintiff, three only remaining pending. One of those then pending was a suit in equity to quiet title to premises at the corner of James and Oak streets, the title to which was claimed by this plaintiff, who was also plaintiff in that action. This action was, during the lifetime of the attorney, tried, and finally decided adversely to his client. Another of the actions pending at that time was an ejectment action brought against this plaintiff to obtain possession of the same premises, and the trial of that action had been enjoined in the equity suit pending its determination. The decision

in the equity suit was decisive of the ejectment action, and nothing further could be done therein in favor of this plaintiff. The other pending action was the one relating to the premises sold to the New York Life Insurance Company, and in which the notice of pendency had been filed and canceled as stated. This plaintiff was a defendant in that action. He claimed title under a sheriff's deed executed to him upon a certificate of sale of the premises, which had been assigned to him. The action was brought to cancel the assignment of this certificate on the ground that it was a forgery, and to cancel the deed. At the time of making the agreement referred to, this action had been tried and decided in favor of the defendant therein, and the decision had been affirmed at the Appellate Division (21 App. Div. 361, 47 N. Y. Supp. 522), and was pending on appeal to the Court of Appeals. The decision was reversed by the Court of Appeals (164 N. Y. 234, 58 N. E. 118), and a new trial granted, on account of the erroneous exclusion of evidence, shortly before the death of the attorney; but it had not been retried. The agreement concerning the attorney's compensation in this litigation provided that he was to receive for all services, "up to and covering the trial of said action," the sum of 15 per cent. upon the market value of the premises at any time between the date of his original employment in 1894 and the close of his services therein. The value of the premises was shown to be $75,000, and 15 per cent. thereof is $11,250. The agreement further provided that the attorney was to receive for his services on an appeal to the Appellate Division, including the argument, the sum of $2,500, and for his services on the appeal to the Court of Appeals, including the argument, the sum of $1,500, and, in case a new trial should be granted, that he should receive for his subsequent services in the action, to and including the final disposition, the sum of $4,000. The trial court has allowed, for the services performed by the attorney in that action, the amounts specified in the agreement, except $4,000, which was to cover the services rendered after the granting of a new trial. Subsequent to the attorney's death, and on the 14th day of January, 1901, other attorneys were substituted as attorneys for this plaintiff in that action, and thereafter, and on the 28th day of the same month, by virtue of some understanding arrived at between the parties, the particulars of which are not shown, a formal stipulation of discontinuance of the action was executed, and likewise a stipulation of discontinuance of the ejectment action pending at the date of the agreement, to which reference has been made, and on the same day formal orders of discontinuance of these actions were granted. In determining the amount of the lien, the court has allowed for the attorney's services in the other actions, for which he was to have a lien on this fund, the amounts provided for in the agreement, less the amount paid by the plaintiff to apply thereon.

The plaintiff's contentions are that the decision is erroneous for six reasons: (1) That the written contract on which the defendant has recovered was between an attorney and his client, and that the burden is on the attorney or his executrix of showing that the instrument was fully understood by the client, was free from misconception on

his part, and is reasonable in its provisions for compensation, and that this burden of proof has not been sustained; (2) that the court below erroneously refused to permit appellant to testify that he did not understand the instrument; (3) that the contract was entire, and was not fully performed by respondent's testator prior to his death, and that, if any recovery can be had, it must be on quantum meruit, and that no value of the services rendered was shown; (4) that the testimony of a former clerk or associate of respondent's testator as to a conversation with appellant was improperly received; (5) that there were errors in allowing for services as if fully performed which had been performed only in part, and there was an error in adding and crediting the amount of payments made on account of the services rendered by the respondent's testator; and (6) that an extra allowance of costs was erroneously made. These contentions will be discussed in the order stated.

1. The agreement expressly recites that it is but the evidence of an agreement made between the attorney and his client concerning the compensation to be received for services to be rendered in a large number of actions pending at the date of the original employment, and of agreements made from time to time thereafter as other litigations arose, and that it was reduced to writing at this time at the special instance and request of the client. The agreement covers 28 pages of the printed record, and, as has been stated, it was both signed and acknowledged by the plaintiff. At the time of making this agreement, the plaintiff also executed and acknowledged an assignment of the fund in question, to the extent of the lien created by the contract. The plaintiff appears to have been an intelligent man of considerable business experience, and had been extensively involved in litigations since 1872, had changed attorneys twice during that time, and had also become involved in litigation with each preceding attorney. He was also the owner of considerable valuable real estate and other property. A vast amount of services appears to have been rendered to the plaintiff by the decedent. The services were rendered in 40 different suits, actions, or special proceedings, and in one matter out of court, and extended from September, 1894, until the death of the attorney, a period of over six years. The experts called by the respondent gave some evidence of the value of some of the services, aside from the agreement, and this evidence, so far as it went, tended to show that the stipulated value of the services was reasonable; but in the main she relied upon the agreement for the value, and has recovered upon that theory. The plaintiff introduced evidence of the value of the services rendered in a large number of the actions, suits, and special proceedings; and some of this evidence tended to show that some of the services rendered were of greater value than the compensation agreed upon—the testimony of one of the appellant's experts averaged higher than the agreed value in 25 of the litigations—but as a whole it tended to show that they were not as valuable. The value of the property involved in litigation in which plaintiff was successful amounted to about $300,000.

We are of opinion that the value of the services as agreed upon between the parties and recited in this agreement was fair and rea-

sonable, and the nature of the contract is such that we think the plaintiff fully understood its terms and provisions. The correspondence between the attorney and his client, and a receipt for moneys paid by the latter, show that there was an agreement between them as to the compensation that the attorney was to receive, and that the payments, aggregating $5,000, subsequently made, were made to apply on the compensation as provided for in that agreement. There was also evidence of a declaration made by the plaintiff, long prior to the reduction of this agreement to writing, indicating the existence of an agreement between them by which the attorney was to receive large compensation. Of course, the general rule is that as to contracts made between the attorney and client, subsequent to the employment, which are beneficial to the attorney, it is incumbent upon the latter to show that the provisions are fair and reasonable and were fully known and understood by the client, but this rule does not apply to agreements for compensation made between an attorney and client prior to the establishment of that relation; and according to the recitals in this contract, which we believe were known and understood by the plaintiff, the principal agreement for compensation was made at the outset, and at the time the attorney was retained. Clifford v. Braun, 71 App. Div. 432, 75 N. Y. Supp. 856; Jenkins v. Williams, 2 How. Prac. 261. This is not an inflexible rule. It is a rule of equity, and should not be rigorously applied where, owing to the death of the attorney, it is impossible for his representatives to make "full and plenary proof." Vignus v. O'Bannon, 118 Ill. 334; Powell v. Murray, 10 Paige, 256. See, also, Tragman v. Littlefield (N. Y. Com. Pl.) 18 N. Y. Supp. 583.

2. The alleged error in precluding the plaintiff from testifying concerning his knowledge of this instrument or its contents consists in excluding, upon the objection of the respondent, his answer to the following question: "Do you know of any lien given by you to anybody upon the fund upon deposit in the New York Life Insurance & Trust Company in favor of anybody?" The objection was that the evidence was incompetent, irrelevant, and inadmissible under section 829 of the Code. The evidence was clearly incompetent. The question called for a conclusion, and the evidence was properly excluded, even if the plaintiff were a competent witness to testify to a personal transaction with his deceased attorney, which he was not.

3. We are of opinion that the contract was not entire. It will be borne in mind that the writing is but the evidence of the previous agreements, which were several as to each action. In the action which had been appealed to the Court of Appeals, it is also manifest that the agreement expressly provided for the compensation for the services rendered down to the time of the death of the attorney. As these services were rendered the contract price became due and payable, and, if it was not paid, the attorney would have been at liberty to have refused further performance, and payment could have been collected. The mere fact that the attorney was prevented by death from rendering the final services does not preclude a recovery for

the services previously rendered, and for which compensation had become due and payable at the rate stipulated.

4. Mr. Hand, who was an attorney practicing for himself, had offices in connection with the decedent, and was accustomed to assist decedent with the latter's practice, and in some of the litigations in question, and on occasions when the decedent would be absent when plaintiff called to see him, the plaintiff would talk with Mr. Hand concerning his legal affairs. Mr. Hand was permitted to testify, over plaintiff's objection and exception that the evidence was privileged, that on one of these occasions the plaintiff complained to him that the decedent was not making the progress with his matters that he should, in view of the large compensation that he was to receive. We are of opinion that this evidence was competent. It was not in the nature of a professional communication, and it does not appear affirmatively that the plaintiff consulted Mr. Hand professionally on that occasion. Under like objection and exception, Mr. Hand was permitted to testify that plaintiff on one of these occasions said something about giving decedent a mortgage to secure his services. This was likewise competent.

5. The counsel have stipulated that the record shows an error in crediting the payments, and that the judgment should be reduced by the sum of $582.80. In addition to the three actions already specified as pending at the time of the death of the attorney, there were six other actions pending, agreed compensation in which was recited in the agreement to which reference has been made. One of these was an action against this plaintiff, based upon a judgment. This action was pending at the time of the decedent's original employment. An order of substitution of attorneys for the defendant was entered, and at this time the action had been tried and decided adversely to this plaintiff, and his former attorney had moved for a new trial on newly discovered evidence, without a case, and the motion had been granted. The decedent defended the order upon appeal, and, upon its being reversed, made and settled a case, and then moved for a new trial, which was granted, and the case was placed upon the calendar and marked "reserved generally," but had not been tried at the time of the attorney's death. The compensation agreed to be paid for all services in this action was the sum of $569.60, and this has been allowed in full by the trial court. The action was discontinued after the attorney's death, as part of the arrangement under which the other actions already referred to were discontinued. The appellant contends, however, that inasmuch as the action was pending, and nothing had been done by the decedent to control its final determination, full payment of the contract price should not have been awarded, and with this contention we agree. The value of the services rendered by the decedent in this action, as indicated by the average opinions expressed by the experts for the appellant, was $383. For services rendered in another action against this plaintiff on a judgment which was also pending at the time of the attorney's death and at the time of his original employment, the respondent has recovered the full contract compensation of $430.70. The decedent was substituted as attorney, put the case

on the calendar, and it was reserved generally, but not tried. The respondent relied upon the agreement, and, in behalf of appellant, experts testified to the value of the services; and the value, as indicated by the average of their opinions, was $78. At the time of the death of the attorney there was also pending an action brought by plaintiff against his former attorneys, Messrs. Ruck & Lippman, as survivors of the firm of Kohn, Ruck & Lippman, to recover $16,000, moneys claimed to have been loaned by him to them. The issues were referred to a referee, and the case was virtually abandoned, the plaintiff having been satisfied, according to the testimony of Mr. Lippman, that the action was based upon a misunderstanding of the facts. The compensation for services in this action was contingent upon success, and no allowance has been made therefor. There was also a special proceeding pending at the time of the death of the attorney, brought by the plaintiff against the last mentioned attorneys to compel them to pay over the sum of $11,324.64, moneys alleged to have been collected by them for him. This proceeding was also referred to the same referee. The plaintiff appealed from the order of reference and prepared, and decedent prepared and printed, the record on appeal. Four sessions were held on the reference, and then, according to the testimony of Mr. Lippman, he satisfied the plaintiff that that proceeding was also based upon a mistake, and it was abandoned. The compensation agreed to be paid for all services rendered in that proceeding was the sum of $2,264.94, and this has been allowed in full. In this instance, also, the respondent relied upon the agreement, and the appellant called experts, the average of whose opinions indicates that the value of the services rendered in the action and special proceedings against the plaintiff's former attorneys was the sum of $750. Another litigation pending at the death of the attorney was an action on an undertaking against his sureties, for the services in which, according to the agreement, the decedent was to receive $250. The decedent was substituted after answer. There was a substitution of parties plaintiff which required the service of a supplemental summons and amended complaint, and the decedent prepared and served an answer to the amended complaint. The case was placed upon the calendar, but not tried. The agreed compensation has been allowed in full. The evidence on the part of appellant tends to show that the services rendered were of the value of about $125, and in this case, also, the respondent relies upon the agreement. The only other litigation pending at the death of the attorney was an action for fraud and deceit, brought by the plaintiff, in which the decedent's agreed compensation was to be 20 per cent. of the claim, which was $3,010. The summons and complaint were served, an order of arrest obtained and executed, and an agreement guarantying the claim resulted; but nothing further was done, and the claim had not been collected. These services were worth only $258.33, according to the average opinions of the experts. The respondent has been allowed $602, the full contract price. The appellant produced his own check, payable to the order of the decedent, drawn upon the National Bank of North America upon the 11th day of November, 1895, for the sum of $1,000, indorsed by the

decedent, and also indorsed "for deposit in the National Park Bank to the credit of D. M. Torrey." The appellant contends that this was a payment to the attorney on account, and the respondent claims that the attorney was a mere conduit for passing the money to Torrey, but there is no evidence of this other than the check. We think the presumption is that this was a payment on account, and that, in the absence of proof that the check was passed to Torrey for the benefit of the plaintiff, he was entitled to credit therefor. The appellant also produced his promissory note, dated June 4, 1896, for $1,000, payable to the order of decedent, two months after date, at the National Bank of North America, and indorsed by the decedent, with no other indorsement, and claimed this as a payment on account. It was disallowed, and we think erroneously. It appeared that the plaintiff had frequently given decedent notes for his services. Although it appeared that decedent had in a few instances procured the discount of the plaintiff's paper at his own bank and given the plaintiff a check therefor, it does not appear that he had otherwise given the plaintiff the use of his name as an accommodation indorser or otherwise. This is the only proof made on the subject. We are of opinion that the presumption that this was a payment made on account attaches here also. The correspondence of the decedent with his client shows that he invited payment on account by notes, and it appears that he then had the notes discounted, and credited the plaintiff with the proceeds only. These aggregated $165.95 less than the face value of the notes. The appellant contended that he should have been credited with the face of the notes, but this contention was disallowed on the trial, and we think erroneously.

6. The court, in granting an extra allowance, exercised its discretion to the full extent allowed by the statute, but, in view of the numerous involved questions presented which required the analysis of an enormous amount of evidence, we cannot say that the discretion has been abused.

We have examined the other questions which have been drawn to our attention, but none of them require special consideration.

It follows, therefore, that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event, unless the respondent shall stipulate to reduce the recovery by the amount of $5,271.66, and interest thereon from the 4th day of March, 1901, to the date of the entry of the judgment, interest having been allowed respondent on all amounts for that period; in which event the judgment is modified accordingly, and affirmed, without costs. All concur.