In the Matter of Proving the Will of MARSHALL P. LEVY, Deceased.

EMPIRE TRUST COMPANY and Another, as Executors of and Trustees under the Will of MARSHALL P. LEVY, Deceased, and Others, Appellants; REMSEN & PARSONS and Others, Respondents.

First Department, November 30, 1923.

Attorney and client — executors and administrators — allowances to attorneys in will contest — firm of attorneys was engaged on behalf of proponents to try contest with understanding that senior member would try case — senior member died before case was ready for trial — death terminated contract — contract was not continued after death of attorney — services rendered must be paid for on quantum meruit — allowances made to attorneys and to special guardian were excessive.

A firm of attorneys was engaged by the proponents and executors of a will and the original attorneys for the proponents to try the issues involved in a contest of the probate of the will, with the understanding that the senior member of the firm was to try the case. The senior member of the firm thus engaged died before the case came to trial and thereafter the contest was settled by a compromise with the contestants. The surrogate made an allowance of $50,000 to the attorneys engaged to try the case, the amount alleged to have been agreed upon at the time of the retainer. The allowances made to the several attorneys and to the experts engaged for the trial of the case, together with the amount of the compromise settlement, amount to more than the contestants would have received if the will had been denied probate.

*Held*, that the evidence shows that the contract was primarily for the services of the senior member of the firm that was engaged to try the case, and that, therefore, when he died the contract was terminated;

That the evidence does not show that the estate was to pay the sum stipulated in the retainer regardless of a satisfactory trial or settlement of the contest;

That the contract of retainer was not continued after the death of the senior member of the firm by any subsequent agreement, and, therefore, the services must be paid for on a *quantum meruit* basis.

In view of all the facts of the case, the allowance made to the attorneys engaged for the trial of the contest is reduced to $25,000 and the allowance made to the original attorneys for the proponents is reduced from $25,000 to $10,000 and the allowance made to the special guardian is reduced from $2,500 to $1,000.

DOWLING, J., dissents, with memorandum.

APPEAL by the Empire Trust Company and another, as executors and trustees, etc., and others, from so much of a decree of the Surrogate's Court of the county of New York, entered in the office of

said Surrogate's Court on the 28th day of November, 1922, admitting to probate the will of Marshall P. Levy, deceased, as awards allowances to the respondents (the original attorneys of record for the proponents of the will and their counsel) and to the special guardian of an infant party.

*Booth & Hewitt* [*Enos S. Booth* of counsel; *John Vance Hewitt* and *Frank H. Towsley* with him on the brief] for the appellants.

*Nathan L. Miller* of counsel [*Edgar T. Brackett* and *Frank M. Roosa* with him on the brief], for the respondents Stanchfield & Levy.

*Daniel S. Remsen* of counsel, for the respondents Remsen & Parsons.

Martin, J.:

Marshall P. Levy died August 25, 1919, leaving a widow and eight children, five of whom resided at home at the time of his death. There were two married daughters, one living in New York and the other in Louisiana, as well as a son who also resided in Louisiana. The estate consisted of real property valued at upwards of $200,000 and personal property of upwards of $1,000,000. Practically the entire amount was left to the widow and five daughters residing at home. By the will there was also left to a daughter, Jetta, residing in New Orleans, and to a son, Milton, trust funds of $10,000 and $5,000 respectively, the income to be paid to them for life, and provisions out of these amounts being made for descendants. Provision is also made for a deferred payment of $1,000 to a daughter, Florence, residing in New York.

Objections to the probate of the will were filed in December, 1919, by the three children last named, they charging undue influence and that the testator was not of sound mind, memory or understanding at the time of the execution of the will and codicil. In January, 1922, amended objections were filed by the three contestants.

Immediately after the death of the testator, the firm of Remsen & Parsons was employed as counsel. That firm also acted as counsel for the temporary administrator.

In September, 1919, it being learned that a contest of the will by the two married daughters and the son was probable, and as the result of an agreement between Mr. Sutton, vice-president of the Guaranty Trust Company of New York, which was an executor and trustee and one of the proponents of the will, Augusta Levy, named coexecutor with the Guaranty Trust Company, and Daniel M. Remsen, counsel, Mr. John B. Stanchfield was retained to

represent the proponents in the event of a trial of the issues involved in the contest. It was agreed that the sum of $1,000 was to be paid, and on September 9, 1919, a letter was received by Mr. Remsen from R. E. Cocks, personal trust officer of the Guaranty Trust Company, which is as follows: " We agree to the payment of the retainer of $1,000 to Mr. John B. Stanchfield on account of his services in case they are needed upon a contest of the Will of the Late Marshall P. Levy, subject to approval of Miss Augusta Levy."

This appears to be the first step in retaining Mr. John B. Stanchfield or the firm of Stanchfield & Levy. Nothing further appears to have been done until about a year later, during the month of November, 1920, at which time the executors entered into an agreement with Mr. Stanchfield.

On this branch of the case, Miss Augusta Levy, one of the executors and proponents of the will, regarding this agreement says: Mr. Stanchfield stated that if his services were required he would desire to have an agreement as to the amount of his fee and would require the payment of $50,000 to include the trial of the case or a satisfactory settlement, stating that if a satisfactory settlement were reached, it would be by reason of his efforts, and that he would consider $90,000 as the maximum amount of any proposed settlement. Mr. Stanchfield further made one of the conditions of his agreement that the case should be prepared for trial by his firm.

It is admitted that Mr. Stanchfield and his firm were employed, that they were to prepare the contest for trial, and he was to act as trial counsel. But it is not admitted that they were to receive $50,000 in the absence of a trial or a satisfactory settlement. Mr. Louis Levy, of Stanchfield & Levy, says Mr. Stanchfield told him what the arrangements were. He asserts that there was no provision either for a satisfactory trial or for a satisfactory settlement; that $50,000 was to be paid whether the suit was won or lost; and that there was to be no reduction of the fee in the event of a settlement.

On the 25th day of June, 1921, Mr. Stanchfield died. It is evident that he had been retained, because of his ability as a trial lawyer, for the purpose of having his firm prepare the case for trial and having him personally act as trial counsel. The estate had a firm of attorneys representing it, and apparently what was principally desired was to have satisfactory trial counsel for the will contest. The death of Mr. Stanchfield placed it beyond the power of Stanchfield & Levy to carry out the contract, by the terms of which Mr. Stanchfield agreed to try the case. His death, therefore, terminated the contract.

In *Spalding* v. *Rosa* (71 N. Y. 40) the court said: " Contracts of this character, for the personal services, whether of the contracting party or of a third person, requiring skill, and which can only be performed by the particular individual named, are not, in their nature, of absolute obligation under all circumstances. Both parties must be supposed to contemplate the continuance of the ability of the person whose skilled services are the subject of the contract, as one of the conditions of the contract. Contracts for personal services are subject to this implied condition, that the person shall be able at the time appointed to perform them; and if he dies, or without fault on the part of the covenantor becomes disabled, the obligation to perform is extinguished. This is so well settled by authority that it is unnecessary to do more than refer to a few of the authorities directly in point. [*People* v. *Manning*, 8 Cow. 297; *Jones* v. *Judd*, 4 N. Y. 411; *Clark* v. *Gilbert*, 26 N. Y. 279; *Wolfe* v. *Howes*, 24 Barb. 174, 666; 20 N. Y. 197; *Gray* v. *Murray*, 3 Johns. Ch. 167; *Robinson* v. *Davison*, L. R. 6 Excheq. 269; *Boast* v. *Frith*, L. R., 4 Com. Pleas, 1.] "

It is now asserted, however, that the contract was thereafter continued by the estate, and arrangements made to secure the services of another well-known trial lawyer. This is positively denied by one executor and practically denied by Mr. Merrell P. Calloway, the representative of the other executor. His affidavit, although he is the representative of an executor of the estate, charged with its protection, cannot be said to show any inclination to unduly favor its contention. He says that there was no such agreement, although he assumed the terms of the contract with Mr. Stanchfield's firm for services were to continue. His affidavit, in part, is as follows: " * * * Deponent stated that it was quite correct that a retainer fee of $1,000 had been agreed upon, but that subsequently Mr. Stanchfield had requested that a definite agreement be made with respect to fees to be paid by the estate and had named the sum of $50,000 for services already rendered and to be rendered by himself and the firm irrespective of whether the case was settled or went to trial, and that the question of the fee had been submitted to Miss Augusta Levy and agreed to before. Deponent stated that it was the understanding of the officers in charge that the firm of Stanchfield & Levy, including John B. Stanchfield, had been employed from the beginning and that after the death of Mr. Stanchfield and the substitution of Senator Brackett, as trial lawyer no express contract reaffirming the original contract as to the amount of the fee had been entered into, but it was assumed that the amount of the fee was the same as had been originally agreed upon."

Miss Augusta Levy says that upon the termination of the agreement by reason of the death of Mr. Stanchfield, the necessity of securing other trial counsel arose; that, after considerable discussion, at the request of Mr. Louis Levy, it was agreed that Senator Brackett should be substituted as trial counsel, if necessary; but that no agreement was made as to the compensation for Senator Brackett or Messrs. Stanchfield & Levy. Mr. Louis Levy says that it was agreed that Senator Brackett was to be retained as trial counsel in the place and stead of Mr. John B. Stanchfield, and that the arrangement made as to compensation was to continue.

In any event, however, after the death of Mr. Stanchfield, Senator Brackett was retained. He was not then connected with the firm of Stanchfield & Levy. Mr. Remsen says he went to Saratoga, placed the matter before Senator Brackett and retained him to represent the estate on the trial. It appears, however, that Messrs. Stanchfield & Levy continued to perform services in preparation for the trial, and that Senator Brackett also rendered services in preparation for the trial.

To sustain the assertion that they proceeded under a contract for the payment of a fee of $50,000, evidence must be produced to show that a contract was made, and the terms thereof must be satisfactorily established. Upon the issue of the continuation of the contract, we have the affidavit of one of the attorneys interested in the event, contradicted by one executor and the representative of the other. One of the executors may be said to be interested, hostile or biased; but no stretch of the imagination could reasonably permit such an inference to be drawn from the affidavits of the representative of the other executor.

In the recent case of *Matter of Howell* (215 N. Y. 466) the Court of Appeals said: " The rule of law relating to original contracts of retainer is not applicable in the case at bar. Here we have the alleged contract made at the close of a trial at a time when the relation of attorney and client had existed for a long period of time and was still in force. In determining the validity and conclusiveness of such contracts, in view of the confidential relation between the parties, the same will be carefully scrutinized by the courts.

" In some jurisdictions it has been held that such agreements are void. In other States contracts of such character are held to be affirmatively invalid on the ground of fraud, and the burden is on the attorney to show the fairness of the transaction in that the compensation provided for does not exceed a reasonable compensation for the services rendered or to be rendered. In this State it has been held that as to contracts made between the attorney and his client subsequent to the employment, which are beneficial to the

attorney, it is incumbent upon the latter to show that the provisions are fair and reasonable, and were fully known and understood by the client (*Boyd* v. *Daily*, 85 App. Div. 581; affirmed, 176 N. Y. 613; *Whitehead* v. *Kennedy*, 69 N. Y. 462, 466).

" The suggestion of the referee that there was no evidence in the case of fraud or undue influence on the part of the petitioner would seem to imply that it was obligatory upon the defendant to show fraud or undue influence on the part of the petitioner. Such is not the law."

We have, after an examination of the whole case, reached the conclusion that the evidence before us does not warrant a finding that the contract was continued after the death of Mr. Stanchfield. Having come to that conclusion, it follows that the services must be paid for on a *quantum meruit* basis. It becomes necessary, therefore, to ascertain what value these services had.

In an action to recover the fair and reasonable value of services rendered by a lawyer, there are many elements which determine the value. In *Randall* v. *Packard* (142 N. Y. 47) the court said: " The general rule is that an attorney, in the absence of an agreement, deserves compensation according to the reasonable worth of his services. . Of that the jury are the sole judges and, to arrive at their value, they may consider the nature of the services rendered, the standing of the attorney in his profession for learning, skill and proficiency, the amount involved and the importance to his client of the result. The reason why the result is one of the important factors in the consideration must be obvious. It not only is some evidence of the usefulness of the services, but, for its effects upon the situation of the client, relatively to what it had been, it must be conceded a degree of influence, in fixing the amount of the attorney's compensation proportioned to the nature and incidents of the result, in connection with the other considerations adverted to."

In *Ransom* v. *Ransom* (147 App. Div. 835, 847) this court said: " In fact, when a lawyer sues his client upon a *quantum meruit*, the law as laid down by our courts makes the fee largely contingent upon success."

It is, therefore, necessary to consider just what was involved, the amount of time really necessary to prepare and try the issues involved, and the benefit to the estate. While lawyers may differ as to the amount of time necessary to prepare a case for trial, all that is necessary is that it be so prepared that the issues may be properly presented to the court or a jury.

There is considerable dispute as to the services that were rendered and their value to the estate. It is contended by the appellants

that they were of little or no value to the estate, for the reason that when the matter was finally adjusted, the estate was in no better condition financially than it would have been had the contest been allowed. The appellants allege that the whole amount involved was in the neighborhood of $314,000; that only three of the heirs contested the will; that the widow and five of the eight children were satisfied with its provisions; that those relating to the three contestants dealt with a sum of money not in excess of $314,000.

It is the contention of the appellants that the allowances made by the surrogate are far in excess of the fair and reasonable value of the services rendered; that there was no enforcible contract to pay such amounts; and that the attorneys are not entitled to more than the fair and reasonable value of the services rendered. It is said by them that both sets of lawyers assert they prepared this case for trial, and that a great amount of time was consumed in the preparation of the case by all counsel. In passing, I may say that if all the services were rendered which it is claimed were performed by all the lawyers in this will contest, the case must have been well prepared.

If there was no contract to pay the amounts allowed by the surrogate, the attorneys are entitled to the fair and reasonable value of their services only. On the subject of the value of services rendered the estate, Miss Georgia Levy states that in May, 1922, the proponents were advised by Stanchfield & Levy and by Mr. Remsen that the contest could be settled, but that it would be necessary to pay more than $90,000 on the settlement, that being the amount suggested during prior negotiations for settlement. The proponents and the other legatees after consultation decided that the most they would pay on a settlement would be $125,000, which amount was to be paid in full settlement of the contest and would be in full for all claims of contestants against the estate. It is said that on May 8, 1922, when the case was called before Surrogate COHALAN, the assertion was made by one of the attorneys that there was a difference of but $5,000 between the parties; that the proponents offered $125,000 and the contestants offered to accept $130,000. It is also said that at the time both the representatives of Stanchfield & Levy and of Mr. Remsen were present; that in truth and fact the contestants claimed the additional $16,000 given them by the will, and that the attorneys for the proponents well knew the proponents and other legatees had consistently refused to make such a settlement and had made known that the highest amount which they would give was $125,000.

The trial was postponed and the parties instructed to submit a compromise agreement. The understanding of proponents at that

time, which understanding they say was confirmed by their counsel, was that the settlement which had thus been agreed upon was on the basis of their previous understanding that the contestants were to lose the $16,000 provided for them in the will.

It appears when the final settlement was made that the contestants were given $130,000 and were permitted to retain all of the benefits accruing to them by the terms of the will, including the sum of $16,000, so that the settlement was for the sum of $146,000 and all other benefits which would accrue to the contestants by the terms of the will.

On the 14th day of December, 1922, an application was made on behalf of the contestants for a construction of the compromise agreement, and upon that application Surrogate FOLEY held, *inter alia:* " In pursuance of its terms the will of the testator was duly admitted to probate by a decree of this court. The agreement also expressly reserves to the contestants the additional ' benefits of the specific provisions made for them ' in and by the will, and paragraph seventh of the agreement recites that the payment of the aforesaid sum is ' subject to all of the rights and benefits secured by the parties of the second, fifth and sixth parts (the contestants) and to Fanny R. Lichtenstein by and under the last will and codicil thereto, which are hereby reserved by and to them respectively.' The language is clear and unambiguous and the trust provided in the will for Milton Percy Levy and Jetta L. Lichtenstein must be set up as speedily as possible. The contention of the executors that the eighth or ' in terrorem ' clause of the will operates to defeat the rights of the contestants in these trusts cannot be sustained in view of the plain language of the agreement. Their claim also to a right to set off any indebtedness due the estate from Jetta L. Lichtenstein against moneys payable to her under the settlement must be overruled, for the eleventh clause of the will expressly forgives this indebtedness."

Pursuant to his opinion (N. Y. L. J. Nov. 29, 1922), the surrogate signed an order dated January 22, 1923, from which order an appeal was taken to this court, which sustained the construction placed on the agreement by him. (206 App. Div. 658.)

After the settlement had been arranged, an application was then made for a decree admitting the will to probate, and also that Surrogate COHALAN fix the fees of Messrs. Remsen & Parsons, Messrs. Stanchfield & Levy, and Morgan J. O'Brien, Jr., who had been appointed special guardian.

His decree provided as follows, with reference to allowances and disbursements to be paid: " To Stanchfield & Levy, counsellors at law, for legal services, Fifty-five thousand six hundred and thirty-

three and 15/100 ($55,633.15) Dollars on account of which Twenty thousand ($20,000) has been paid; to Remsen & Parsons, attorneys for the petitioners herein, for legal services, Twenty-five thousand four hundred seventy-four and 37/100 ($25,474.37) Dollars; to Harry T. Smith and Caffey, counsellors at law, of Mobile, Alabama, for legal services, Seven Thousand Five hundred ($7,500) Dollars; to Farrar, Goldberg & Dufour, counsellors at law, of New Orleans, Louisiana, for legal services, Two Thousand five hundred three and 11/100 ($2,503.11) Dollars; to Dr. William H. Pritchard, for professional services as medical expert Sixteen hundred and twenty-five ($1625.00) Dollars, on account of which Five hundred ($500) Dollars has been paid, leaving a balance due of Eleven hundred and twenty-five ($1125) Dollars; to Dr. Carlos F. McDonald, for professional services as medical expert, Fifteen hundred and twenty-five ($1525) Dollars, and for his expenses Twenty-five ($25) Dollars; making a total of Fifteen Hundred and Fifty ($1550) Dollars on account of which Five hundred ($500) Dollars has been paid, leaving a balance still due of Ten Hundred and Fifty ($1050) Dollars; to Dr. Palmer Townsend, for professional services as medical expert, One hundred and fifty ($150) Dollars, all of which is still unpaid; to Dr. Condict W. Cutler, for professional services as medical expert, One Hundred ($100) Dollars, all of which is still unpaid, and to Dr. Charles H. Chetwood, for professional services as medical expert, Thirty-five ($35) Dollars, all of which is still unpaid."

Objecting to the above allowances made to the attorneys, the appellants point to the fact that, if the services alleged to have been rendered are to be judged by the result, the court is not justified in granting the amounts claimed, for the reason that the estate would have been in no worse position had the contestants succeeded. They assert that in that event the estate would have been compelled to pay $315,661.63; and that, including the allowances now under discussion and other disbursements of the litigation, the net loss by reason of the settlement is $3,785.

The estate paid, by the terms of the compromise agreement, the sum of $130,000. To that should be added the sum of $16,000 given under the terms of the will, making a total of $146,000. In addition, all indebtedness of the three contestants was canceled. Although it does not appear just what this indebtedness was, it is fair to assume, when the testator believed that a cancellation of it was sufficient to equalize the bequests given to the other children, that it must have been very substantial. The appellants also point out that the surrogate has made allowances of $97,070.73, and that, in addition, the firm of Remsen & Parsons has been paid $5,000 for services rendered the temporary administrator for work

First Department, November, 1923.                    [Vol. 207

connected with the estate. They also assert that the share of the contestants in taxes, expenses of probate and other incidental expenses necessary in such a proceeding, has been released by the compromise agreement.

The appellants also advert to the fact that it was necessary, after the settlement was made, to secure a construction of the settlement agreement; that under the terms of this agreement, although they had been advised that contestants forfeited all rights under the will, the express provisions thereof reserved all rights to the contestants as provided by the will, and thus gave them advantages which they could never have hoped for had the agreement not been made.

The fact that the estate is a large one is not in itself a reason for allowing a large sum for services rendered.

It is impracticable to take up the items of service in this opinion without unduly prolonging it. It may be valuable, however, to again call attention to the fact that this will contest was never tried. Mr. Stanchfield no doubt placed considerable value upon his services as a trial lawyer, which he intended to render during a protracted trial of the issues. The same amount may not be charged in a case where there has been a protracted trial of the issues as in a case where there was a settlement without a trial, unless such payment is required by a contract.

The services at best seem to have been rendered by subordinates in the office of Stanchfield & Levy, whose services could not have been considered equal to those of Mr. Stanchfield. When depositions were to be taken in preparation for the trial, attorneys were employed in both Alabama and Louisiana. One firm was paid $7,500, and another firm $2,503.11, and, in addition, because of Mr. Stanchfield's illness, another New York attorney was employed to prepare for the taking of the depositions. He, too, went to New Orleans and Mobile with Mr. Daniel J. Mooney, who also was employed by Stanchfield & Levy, evidently to assist in preparing the case for trial.

It may also be noted that the estate has already paid, or is obligated to pay, substantial sums of money to those employed in assisting in the preparation of the will contest.

On the question of services rendered by Messrs. Remsen & Parsons, it is conceded that there was no contract and that the services must be paid for on a *quantum meruit* basis.

After a thorough consideration of the record, we have come to the conclusion that the allowances that have been made are out of all proportion to the value of the services rendered and are not otherwise justified. In addition to the $25,000 claimed by the

firm of Remsen & Parsons which has been allowed by the surrogate, there is also a claim for services by them growing out of the appointment of a temporary administrator of the estate. Claimants have refused to state whether the sum of $5,000, already paid, is in full, or whether, in the future, other sums will also be demanded for services rendered. The correspondence on this subject is interesting. ·

The attorneys for the appellants submitted a letter to the attorneys, as follows:

" *November* 15, 1922.

" REMSEN & PARSONS,
            " 60 Wall Street,
                  " New York:

" GENTLEMEN.— In re Marshall P. Levy, deceased.

" In examining your statement of account in the above matter, we find that your present claim is against the ' Estate of Marshall P. Levy ' and that on December 31, 1921, you wrote the Guaranty Trust Company of New York requesting a payment of $5,000 on account of your services to the Temporary Administrator, and stating in that letter ' of course this is entirely separate from our services to you and Miss Levy as proponents.'

" Will you kindly advise us on what theory you make separate charges in this matter, and whether or not you have any other claim against this estate either against the Temporary Administrator or the Guaranty Trust Company and Miss Levy as proponents of the Last Will and Testament of Marshall P. Levy, and if so, the amount of same.

" And will you also furnish us with an itemized statement of your services rendered to the temporary administrator.

" Thanking you in advance, we are,
            " ·Very truly yours,
                  "(sd) BOOTH & HEWITT."

In reply to that letter they received the following letter:

" *November* 15, 1922.

" Messrs. BOOTH & HEWITT,
            " 165 Broadway,
                  " New York City: ·

" GENTLEMEN.— In re M. P. Levy.

" In reply to your favor of this date we would say that our claim for services now before the Surrogate is only for services rendered in relation to the probate of the will as you will see by consulting our bill.

13

" Our charges against the Guaranty Trust Company as temporary administrator relate to its duties as an officer of the Court — a matter entirely separate and distinct from its duties as one of the proponents of the will. As our charges for these latter services are not now before the Court we cannot see why we should be called upon at this time to furnish any statement concerning the same.

" Yours very truly,

"(Sd.) REMSEN & PARSONS."

It is also interesting to note that Mr. Remsen claims that for several months he devoted his entire time to preparing this contest for trial to the exclusion of all other business in his office. We have been unable to discover just why it was necessary for him to perform such services or what those services were.

We have come to the conclusion that a fair compensation for Messrs. Remsen & Parsons, considering the fact that they have already received $5,000 for work performed, would be the sum of $10,000, instead of $25,000 as allowed by the surrogate.

We have come to the conclusion that a very liberal allowance for services referred to generally as having been rendered by Messrs. Stanchfield & Levy would be $25,000, instead of $50,000 as allowed by the surrogate.

The services rendered by the special guardian would be fully paid for by an allowance of $1,000, instead of the $2,500 allowed in the decree.

The order should be modified as indicated, and affirmed as modified, without costs.

CLARKE, P. J., FINCH and McAvoy, JJ., concur; DOWLING, J., dissents.

DOWLING, J. (dissenting):

I dissent from the conclusion reached by the majority of the court that the services rendered by the firm of Stanchfield & Levy should be compensated in the sum of $25,000 and no more, upon the ground that the agreement to pay said firm for such services the sum of $50,000, found by the learned surrogate to have been made, is established by a preponderance of the credible testimony in the case, and that his finding in that respect should be affirmed.

Order modified as indicated in opinion and as modified affirmed, without costs. Settle order on notice.