In the Matter of the Estate of NATHAN LICHTBLAU, Deceased.*

Surrogate's Court, Bronx County, January 19, 1933.

* See, also, 131 Misc. 826.

*David Stein* [*Hyman Wiener* of counsel], for the petitioner.

*McKennell & Goody*, for the respondent.

HENDERSON, S. This is a discovery proceeding. The answer is a general denial, and there is an affirmative defense that a partnership existed. The respondent, an attorney, is the sister of the decedent. The decedent was also a lawyer. Until November, 1925, he was practicing law individually. At about that time the respondent engaged in the practice of law from the same offices that the decedent had formerly occupied solely. There is considerable documentary evidence bearing on the question as to whether there was a partnership. On November 12, 1925, there was a signature card filed with a bank which shows the opening of an account under the name Lichtblau & Lichtblau. It was signed by the decedent and the respondent as members of the firm. In 1926 the lease which had formerly been in the name of the decedent individually was renewed in the name of the firm. A proceeding to fix an attorney's lien was brought in the name of Nathan Lichtblau and Fannie Lichtblau, as attorneys and copartners doing business under the firm name and style of Lichtblau & Lichtblau. The petition in that proceeding is verified by the decedent and refers to " his partner Fannie Lichtblau." In an affidavit of engagement the decedent stated that " the other member of the firm is away on her vacation." Two affidavits of regularity were offered in which the decedent swore that he was a member of the firm of Lichtblau & Lichtblau. The assistant superintendent of the building in which the law office was located testified that the decedent requested him to change the name on the door from Nathan Lichtblau to Lichtblau & Lichtblau and to place the names Nathan Lichtblau and Fannie Lichtblau in smaller letters. In February or March, 1926, he says, a lease was sent to the tenant, made out in the name of Nathan Lichtblau. The decedent returned the lease and requested that it be made out in the name of the firm, which was done. The lease was then executed by the decedent in the name of the firm.

A number of witnesses, including attorneys who had business with Lichtblau & Lichtblau, testified that there had been representations by the decedent that the respondent was his partner. A number of clients and friends of the decedent testified to the same effect.

Three witnesses called by the petitioner testified to the effect that the decedent had stated that the respondent was not his partner. Three other witnesses testified to alleged statements of the respondent to the effect that there was no partnership. The

petitioner's witnesses were contradicted by the respondent. One of these witnesses was an attorney who contracted a bigamous marriage with the respondent's sister. He admitted that he was influenced in contracting the marriage by a desire to secure pecuniary advantage from this law practice. The sister has procured an annulment. It is my belief from his manner and his testimony that he was motivated by a spirit of revenge against the members of the family he had wronged. His testimony is unworthy of belief.

In my opinion the witnesses for the respondent were truthful. From their testimony and the documentary proof offered at the hearing, I am satisfied that the decedent and the respondent were copartners in the practice of the law from on or about November 12, 1925, to the date of the decedent's death.

With respect to the cases of Jubinsky v. U. S. Trucking Co., Bankhalter v. I. R. T. and Halloran v. I. R. T., it appears that they were started and prosecuted in the name of Nathan Lichtblau. Two of them were settled after his death and the Halloran case is still unsettled. There is no evidence in the record that these cases ever became firm assets. It is urged that the court should direct that the net amount received by the respondent in the settlement of those cases should be turned over to the administratrix and that the papers in the Halloran case should also be turned over. It does not appear that the respondent has possession of the Halloran papers, and the court could, therefore, make no such direction. While I make no finding that these cases are assets of the partnership, they are not the property of the estate. The direction requested by the petitioner that the respondent turn over the net proceeds collected in those cases, cannot be made as such money is not the property of the estate. Where a lawyer agrees to prosecute a claim for an agreed compensation and his death intervenes before a judgment or settlement of the litigation, his contract of employment is terminated. As he cannot perform his part of the agreement, there can be no recovery by the representative under the contract. The decedent's client and the defendant in the action, provided it had knowledge of the lien, are bound to pay to the representative the sum of the reasonable value of the services rendered. (Sargent v. McLeod, 209 N. Y. 360, 365.) It is admitted that the furniture of the office and a law library were owned by the decedent before the formation of the partnership. These were used by the partnership, but there is no proof that they ever became part of the assets of the firm. The respondent will be directed to turn over the furniture of the office and the law library owned by the decedent at the time of the formation of the partnership. If the parties are unable to agree

within ten days as to what furniture and books are to be turned over to the administratrix, either party may bring on that issue for a hearing upon five days' notice.

It is urged by the petitioner that a partnership accounting should be directed if a partnership is found to exist. She urges that the surrogate may direct such an accounting in a discovery proceeding upon the authority of *Matter of Raymond* v. *Davis* (248 N. Y. 67).

In that case a creditor instituted a proceeding to collect a claim against the estate. The decision in that case holds that when it is necessary for the determination of a claim against the estate, the surrogate may direct a partnership accounting as a preliminary to the determination of the rejection or allowance of the claimed indebtedness of the estate, in order that there may be a complete disposition of the matter before the court. The partnership accounting in that case was a necessary incident to the determination of the claim. A discovery proceeding is essentially inquisitorial in character. (*Matter of Heinze*, 224 N. Y. 1.)

Section 206 of the Surrogate's Court Act provides: " If it appears that the petitioner is entitled to the possession of the property, the decree shall direct delivery thereof to him, or if the estate property shall have been diverted or disposed of the decree may direct payment of the proceeds or value of such property or may impress a trust upon said proceeds or make any determination which a court of equity might decree in following trust property or funds. If such answer alleges title to or the right to possession of any property involved in the inquiry, the issue raised by such answer shall be heard and determined and a decree made accordingly."

The answer in this proceeding alleges a copartnership. As I have found that there was such a copartnership, it follows that the respondent has proven her title to the partnership property. Upon the death of one partner the copartner becomes the legal owner of the assets of the firm. The deceased partner's representative has no legal interest in the assets. The representative has only an equitable interest in the distribution of any surplus remaining after the payment of the firm debts. (*Williams* v. *Whedon*, 109 N. Y. 333, 338; *Costello* v. *Costello*, 209 id. 252, 259; *Stem* v. *Warren*, 227 id. 538, 546; *People ex rel. Whitney* v. *Loughman*, 226 App. Div. 108, 112.)

Upon the determination that title is in the respondent there is a complete adjudication of the rights of the parties in the discovery proceeding. A partnership accounting is an independent proceeding and is not incidental to the determination of the rights of the parties in the present proceeding. Its purpose is to determine the extent of the indebtedness of the accountant to the estate. There

is no jurisdiction in this court to direct such an accounting or to determine such an indebtedness either in an independent proceeding or one for discovery. (*Matter of Thomas*, 235 App. Div. 450, 454; *Matter of Bawer*, 132 Misc. 568; affd., 226 App. Div. 866; *Matter of Kassel*, N. Y. L. J. Nov. 30, 1932, WINGATE, S.)

*Matter of Raymond* v. *Davis* (*supra*) holds that the power of the surrogate to direct an accounting flows from section 40 of the Surrogate's Court Act. There is a pronouncement on the effect of that section with respect to a discovery proceeding in *Matter of Hyams* (237 N. Y. 211). Judge McLAUGHLIN said: "It is suggested that when sections 205 and 206 are read in connection with section 40 of the Surrogate's Court Act, it has the power to determine all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter involved. Section 40 does not enlarge the powers of the Surrogate's Court in so far as the same relate to a discovery under sections 205 and 206."

For the reasons stated, I decline to direct a partnership accounting. Except as to the furniture and the law books, which the respondent will be directed to turn over to the administratrix, this proceeding is dismissed. Settle decision and decree accordingly.