Moss, S.
The petitioners have instituted this proceeding under section 231-a of the Surrogate’s Court Act, as an incident to the accounting proceeding of the Public Administrator, and request the court to fix their fees at $2,500 for legal services rendered to the fiduciaries of the estate of Patrick Scanlon, deceased, in the estate of the decedent herein.
There seems to be no dispute about the facts. Catherine Scanlon, the decedent herein, died intestate in this county on August 17, 1940. Letters of administration were issued to the Public Administrator on November 13, 1941. The decedent left a gross estate consisting of personal property approximately of the value of $12,500. Patrick Scanlon, a paternal uncle and distributee of the decedent, survived her. He resided in Ireland and died therein on March 5, 1941. His will was probated in Ireland and letters testamentary were issued to his son, Timothy. On May 10, 1943, Leo T. McCauley, Consul General of Ireland, was appointed ancillary executor of the estate of Patrick Scanlon deceased. Thereafter McCauley was transferred to another country by his Government. He resigned as ancillary executor and on November 10, 1947, Garth Healy, Consul General of Ireland, was appointed as his successor. Garth Healy died on December 17, 1954. Thereafter John M. Conway, Consul General of Ireland, was appointed successor ancillary executor. As'such fiduciary he has filed an affidavit in opposition to the petitioners’ application. He raises no question as to the quantum of the services petitioners claim to have performed, but sets up a defense that petitioners’ compensation should be computed on the percentage basis pursuant to their letter dated April 30, 1942, mailed to the Irish Consulate. The relevant part of the letter is as follows: ‘ ‘ For your record, we herewith confirm understanding as to our fees for representing you in the matter to be three to five per cent of the gross value of the estate turned over to you as Ancillary Executor, and, in addition, we are to be reimbursed for disbursements incurred.”
Petitioners do not deny the letter, but claim, without contradiction, that it was never thereafter referred to or considered by the parties. For that reason, they contend, the letter should not serve as the sole standard of evaluating their services. They further contend that the eventualities which occurred after the letter was mailed and the incidental exigencies which followed required them to perform additional and extraordinary services *68 not foreseeable when they were retained by the original ancillary executor.
A summarized statement of such additional and extraordinary services includes the following: accounting and discharge of the first ancillary executor upon his resignation; preparation of application for the appointment of one Sean Hunan as successor to McCauley sent to Ireland for execution and not used because Garth Healy was the new Consul General; preparation of application for the appointment of Garth Healy as successor ancillary executor; preparation of application for the appointment of John M. Conway, present Consul General, as successor ancillary executor; proceedings to compel the Public Administrator then in office to account; proceedings for the issuance of a commission to take testimony of witnesses in Ireland; protracted searches for missing witnesses who had disappeared to establish that Patrick Scanlon was the sole distributee of the decedent; many conferences; numerous correspondence; studies of questions of law presented in connection with the extraordinary services and other incidental and related services.
It is to be noted that the agreement referred to in petitioners’ letter is contingent on the gross value of the estate turned over to the ancillary executor. An amount of speculation developed during the administration as to whether any of the ancillary executors was able to establish the status of Patrick Scanlon as a distributee and particularly the sole distributee of the decedent.
In order to apply a proper formula for evaluating the petitioners’ services in the circumstances presented it will be necessary to review some of the authorities on the subject.
The late learned Surrogate Wingate of this court in Matter of Abruzzo (139 Misc. 559, 560) said: “it is the obligation of the court in so far as may be permitted by law, to see to it that clients interested in proceedings before this court treat their attorneys in a just and equitable manner.”
An attorney retained to perform legal services may be discharged at any time, with or without cause, without recourse to damages for the breach of contract. The attorney is relegated exclusively to an action or proceeding for the reasonable value of his services up to the time of his discharge. (Reinwald v. Chemical Bank & Trust Co., 205 Misc. 335, affd. 283 App. Div. 966, motion for leave to appeal denied 283 App. Div. 1079; Matter of Nittoly, 106 N. Y. S. 2d 807, 808; Martin v. Camp, 219 N. Y. 170.) However, where the attorney is employed under a general retainer for a fixed period to perform legal services with relation to matters that may arise during the period of *69 a contract, and he is discharged without cause, the client is liable for a breach of contract (Greenberg v. Remick & Co., 230 N. Y. 70).
An attorney’s contract of retainer may be cancelled in its entirety but it cannot be partially abrogated. If a contract is completed it may be enforced, subject to the Surrogate’s approval of the value of the services (Matter of Meng, 227 N. Y. 264, 268-270). After cancellation, its terms no longer serve to establish the sole standard for the attorney’s compensation. Together with other elements they may be taken into consideration as a guide for ascertaining quantum meruit (Matter of Krooks, 257 N. Y. 329; Matter of Tillman, 259 N. Y. 133, 135).
An attorney retained by an estate fiduciary for the performance of estate duties is the attorney for the fiduciary, not for the estate (2 Butler on New York Surrogate Law & Practice, § 1725; Matter of Schrauth, 249 App. Div. 847). An estate fiduciary may choose any attorney he wishes for the performance of legal services for the estate, even if the testator’s will has designated or named another. (Matter of Caldwell, 188 N. Y. 115, 121.)
Every proceeding in a Surrogate’s Court is commenced by the filing of a petition (Surrogate’s Ct. Act, § 48; Matter of Mosessohn, 145 Misc. 378; Matter of Tilden, 117 Misc. 656, 659; Matter of Bemis, 116 Misc. 516), and jurisdiction over a party is acquired by the proper service of a citation, or an order to show cause or other authorized mandate (Surrogate’s Ct. Act, § 52; Matter of Kupofsky, 202 Misc. 756). Each proceeding is separate and independent (Matter of Bemis, supra). A decree made therein terminates it (Surrogate’s Ct. Act, § 78) and has the same force and effect of a judgment in the Supreme Court (Matter of Hoyt, 186 Misc. 272). Hence a retainer of an attorney in a proceeding terminates with the entry and service of a decree therein. If a fiduciary requests an attorney to institute another proceeding, it constitutes a new employment and in the absence of specific terms the services will be compensated on a quantum meruit basis, subject to the approval of the Surrogate. "When a fiduciary either through death, resignation or removal is replaced, the agreement between the former representative and the attorney is automatically terminated and the succeeding representative has a right to select any attorney he chooses. He is not bound by the terms of the agreement between the former executor and his attorney. He may select the same attorney and he may do so on the same terms or on other terms, in which event his services would be compensated on a quantum meruit basis.
*70 The retention by a succeeding fiduciary of the same attorney without a separate agreement of employment does not necessarily imply the continuance of the terms of the agreement entered into by the attorney with the former fiduciary.
The services of an attorney may terminate by operation of law. If any attorney is incapacitated to continue his services by operation of law his right to compensation is not defeated. Where the contract is terminated by death or disability of the attorney the client is not ordinarily liable under the contract, but only on a quantum meruit basis (Matter of Lichtblau, 146 Misc. 278, 280; Matter of Levy, 207 App. Div. 183). If the contract is not entire, but severable, and the death of the attorney occurs after complete performance of the severed part his representative may recover for the part performed and is not limited to the recovery for the part performed and is not limited to the recovery on a quantum meruit basis (Boyd v. Daily, 85 App. Div. 581, 587, affd. sub nom. Boyd v. New York Security S Trust Co., 176 N. Y. 613).
On the reviewed authorities, the court is of the opinion that the services of the petitioners, to and including the entry of a decree herein and distribution as may be directed thereunder, by reason of all the facts and circumstances shown herein, should be compensated on a quantum meruit basis. The court finds that the amount requested by the petitioners is fair and reasonable and will allow the same. In addition the petitioners will be allowed their proper disbursements on filing an affidavit containing an itemized statement thereof, a copy of which shall be served on the opposing parties. Settle decree on notice.