James Gibson, J.
Upon plaintiff’s appeal to the Court of Appeals, that court found (40 NY2d 731) that the New York State Emergency Moratorium Act for the City of New York (L 1975, ch 874, as amd by ch 875) is violative of the State Constitution in denying "faith and credit” to the short-term anticipation notes of the city ( NY Const, art VIII, § 2) and is therefore invalid. The court’s remittitur to the Supreme Court, New York County, directed, among other things, that the Supreme Court hear and determine with dispatch: "3. Whether, in any orders or judgments entered, the payment of interest on the principal of the municipal notes shall be directed at the face rate prior to maturity and at the rate of 6% as provided in chapters 874 and 875 of the Laws of 1975 from the date of maturity to the date of payment.” (40 NY2d 1094.) The 6% rate thus referred to is that provided for in the act requiring that interest be paid at the face rate fixed in each obligation until maturity and thereafter at not less than 6% "until the principal * * * is paid or otherwise discharged” (Emergency Moratorium Act, § 5, subd [B]; L 1975, ch 874, § 2, as amd by L 1975, ch 875, § 1). In addition, the act suspended the enforcement of the city’s short-term obligations for the "moratorium period” of three years (Emergency Moratorium Act, § 2, subd 3; §§ 3, 4). Upon the issue of interest, as delineated by the remittitur, the plaintiff noteholder and the *1049 defendant city have submitted memorandums of law. The defendant Municipal Assistance Corporation for the City of New York (MAC) has stated that it takes no position with respect to the issue of interest.
The notes held by plaintiff, and the other notes referred to and categorized in the remittitur, provided for payment of interest at various rates, all substantially in excess of the 6% rate, as provided by the act and referred to in the remittitur. Plaintiff claims to be entitled to the face rate to the date of maturity and thereafter at that same rate to the date of payment of the particular obligation, whether payment be made before or after the entry of judgment. The city contends that there is "significant support” for a requirement that interest be paid at 6% "from the time of maturity until the time of ultimate payment” and, indeed, adheres to this conclusion and suggests no alternative. The result, of course, is to override the provisions of subdivision 1 of section 3-a of the General Municipal Law, which in general imposes a 3% rate upon "any judgment or accrued claim” against a municipality.
The Court of Appeals did not explicitly strike down the provision for a 6% rate, and, from the direction in the remittitur that this court hear and determine whether the 6% rate shall be paid from the date of maturity to the date of payment "as provided” in the act, it is clear that the Court of Appeals decision is not to be read as necessarily applying its declaration of unconstitutionality to the interest rate provision by implication.
The plaintiff submits no convincing contention or sound basis for maintaining the face rate beyond the date of maturity and cites no persuasive authority supportive of its position. The 6% rate envisioned by the act is substantially lower than the lowest of the face rates in question; but it is substantially higher than the 3% rate contemplated by subdivision 1 of section 3-a and, of course, the zero rate which might well have obtained for a long period of time, had default not been averted. As an integral part of the over-all plan, the 6% rate from the date of maturity forward, which the city assumed and paid, has gained for it forbearance for a considerable part of the period deemed vital to the rehabilitation of its critical fiscal situation. To deprive the noteholders of their relatively meager quid pro quo would be unthinkable. Authority interdicting so unjust a result is not lacking.
The "void ab initio doctrine” rendering wholly ineffective *1050 every part of a statute found unconstitutional is no longer rigidly applied. Thus: "The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects, — with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified.” (Chicot County Dist. v Baxter State Bank, 308 US 371, 374, rehearing den 309 US 695; and see Lemon v Kurtzman, 411 US 192; Phoenix v Kolodziejski, 399 US 204; Cipriano v City of Houma, 395 US 701; Great Northern Ry. Co. v Sunburst Co., 287 US 358.)
There was early recognition of the rule in New York in Harris v Jex (55 NY 421), and a very recent statement of the doctrine is to be found in the opinion at Special Term in Incorporated Vil. of Northport v Guardian Fed. Sav. & Loan Assn. (87 Misc 2d 344, 349).
Upon evaluation of the case at bar according to the broad considerations enunciated in Chicot (supra) and the general principles and flexible treatment suggested in the cases that followed it (see, e.g., Chevron Oil Co. v Huson, 404 US 97, 106-107), the conclusion is clear that the court’s determination of unconstitutionality cannot, in justice, be applied retroactively with respect to the interest provisions. In the circumstances apparent here, this conclusion is fully warranted, if not, indeed constrained, by the principles and authorities hereinbefore discussed, and is consistent with the provisions of the saving clause embodied in the statute in the usual terms (L 1975, ch 874, § 3; People ex rel. Alpha Portland Cement Co. v Knapp, 230 NY 48, 60)* and is consistent as well with the *1051 direction by the Court of Appeals that the question of rate be considered and determined here.
Plaintiff contends, of course, that the face rate should be applied from the date of maturity to final payment and discharge; but the short and simple answer is that the contracts — the notes — provided for payment of the face rate only until maturity and the Legislature was fully empowered to provide, as it did, for payment thereafter at a rate lower than the face rate and, incidentally, higher than the statutory rate otherwise applicable to accrued claims (General Municipal Law, § 3-a).
It follows that the provision for payment of interest on each note from November 14, 1975 to the date the same shall be paid or otherwise discharged (Emergency Moratorium Act, § 5, subd [B]), whether before or after judgment, must be recognized and enforced.
Either party may submit order embodying this determination and declaration, consistent with paragraph B (3) of the remittitur, for settlement on March 2, 1977 on not less than five days’ notice.

 In its brief, the city, citing the saving clause, considers that the "relevant part” of the statute declared unconstitutional does not include the interest provisions and thus that the 6% rate obtains.