James Gibson, J.
The court has for decision related motions in connection with the continuing litigation involving the city’s short-term notes, as follows:
Motion No. 1 by Martin Aaron et al. to intervene in this action on the grounds set forth in CPLR 1012 (subd [a], pars 2, 3).
Motion No. 2 by Martin Aaron to intervene in this action on the ground set forth in CPLR 1012 (subd [a], par 2) for the limited purpose stated.
Cross motion by defendant City of New York to disqualify movants’ attorney A. Lawrence Washburn, Jr. from serving as counsel in this or any related action.
The motions and cross motion were argued on June 7, 1977 and decision thereof was reserved.
This action, in which movants seek to intervene, was brought to recover judgment declaring unconstitutional the New York State Emergency Moratorium Act for the City of New York (L 1975, ch 874, as amd by ch 875) whereby the payment of certain short-term anticipation notes issued by the City of New York was purportedly postponed. The Court of Appeals found the act in violation of section 2 of article VIII *206 of the State Constitution, under which the city was prohibited from contracting any indebtedness unless it should pledge its faith and credit for the payment thereof (40 NY2d 731). The determination by the Court of Appeals was implemented by its remittitur issued February 8, 1977 (40 NY2d 1094) followed by this court’s decision determining interest rate (88 Misc 2d 1047) and its decision awarding judgment (NYLJ, March 7, 1977, p 11, col 2) upon which judgment was signed on March 10, 1977. The instant motions must be decided in context of these judicial determinations and of subsequent related decisions of this court, and in light of the ongoing nature of Flushing wherein additional appropriate relief may be awarded from time to time at the foot of the judgment and the remittitur recalled upon appropriate application.
motion no. 1
As appears by their notice of motion, movants seek to intervene "on the ground that the movants’ interest may not be adequately represented by the present parties and the movants are or may be bound by the relief to be rendered herein, and on the ground that the action involves the disposition and distribution of, and a claim of damages for injury to property and movants may be affected adversely by the relief herein”. The grounds thus conclusorily stated are those appearing in the statute (CPLR 1012, subd [a], pars 2, 3) but the motion papers do not factually support them. The moving affidavit does make clear that "[t]he purpose of intervention is to propose an offer of settlement to the City of New York” and that "[t]he motivation for the offer of settlement is to benefit the City by arranging for the immediate payment to class members electing the same and deferred payment at higher than 6% interest for class members consenting thereto.” This purpose is not within the intendment of the statute or that of the remittitur; the city has disapproved movants’ proposals; this court has no authority in the premises; and, in any event, the motion, as bottomed on movants’ ephemeral project has been rendered academic, in practical effect, by this court’s order of administration No. 1, signed March 15, 1977 (NYLJ, March 17, 1977, p 10, cols 5, 6; p 11, col 1), providing method of payment, deferments, safeguards and remedies consistent with the remittitur. Further, the delay attendant upon movants’ intervention and the consideration of their proposals would serve only to disrupt the presently accelerated progress *207 of the processing of the noteholders’ applications for judgments and the entry and payment of the resultant judgments.[1] It seems not inappropriate to note, in this context, that the proposed intervenor Aaron has made application for judgment which has been approved, subject to production of his notes, which he has chosen not to produce; and that with respect to the remaining intervenors — four in number — at least two have recovered judgments which have been paid.
Motion No. 1 denied.
motion no. 2
This second motion for intervention, assertedly "for the limited purpose of filing notice of appeal” from this court’s determination of interest rate (88 Misc 2d 1047, supra), seeks class action status to prosecute that appeal. Indeed the two motions, Nos. 1 and 2, while ostensibly seeking intervention for different reasons, are both inextricably geared to the attainment of class action status for the intervenors. That status was sought in the original action itself by plaintiff Flushing and was, by implication, denied by the Court of Appeals, which noted that "plaintiff may speak only for itself’ (40 NY2d 1088). In this court, intervention has been sought by others and has been consistently denied (see Pyramid Serv. Co. v City of New York, NYLJ, Nov 4, 1976, p 4, cols 2-3, per Fraiman, J.; Aaron v City of New York, NYLJ, Feb 7, 1977, p 7, col 2, per Asch, J.; Flushing Nat. Bank v Municipal Assistance Corp. for City of N. Y. [Pyramid Serv. Co.], 89 Misc 2d 342, per Gibson, J., mot for rearg den 89 Misc 2d 783). This court adheres to those decisions.
It is true that on the second ;Pyramid application (89 Misc 2d 342, 346-347, supra) this court stated that plaintiff Pyramid might "move, upon appropriate papers, to intervene in Action No. 1 for the limited purpose of taking an appeal from the determination of interest rate [citation]; this in consideration of the fact that there has thus far been no indication that any other party contemplates such an appeal (see CPLR 1012, *208 subd [a]).” Thereafter, however, plaintiff Flushing did file timely notice of appeal; and, finally, judgments have been entered in favor of some 11,561 noteholders (supra, p 207, n 1), including most if not all of the proposed intervenors other than Aaron, and, so far as appears, none has sought review of the interest rate determination (88 Misc 2d 1047, supra) by appeal from so much of his judgment as awarded 6% interest, rather than the face rate, from the date of maturity.
Motion No. 2 denied.
CROSS MOTION
The city defendants oppose motions Nos. 1 and 2 and, further, apply for an order disqualifying movants’ attorney, A. Lawrence Washburn, Jr., from serving as counsel in this or any related proceeding. The defendant MAC, appearing by counsel and participating in the oral argument, joined in the application and here supports the city’s position in all respects. The amicus curiae appeared on the oral argument, in which he did not participate, and filed a brief contesting movants’ claim of res judicata and refuting their denial of an attorney-client relationship between Mr. Washburn and the city.[2]
The denial of motions Nos. 1 and 2 hereinbefore announced does not moot the cross motion, inasmuch as the proceedings pursuant to these motions are not necessarily concluded and, further, there are in progress in this court other litigated city matters presented by Mr. Washburn as attorney and closely, if not, indeed, inextricably, related to these motions and to the Flushing litigation generally.
The cross motion asserts violations by Mr. Washburn of canons 4 and 9 of the Code of Professional Responsibility, as approved by the American Bar Association and adopted by the New York State Bar Association, effective January 1, 1970.
Canon 4 requires that a lawyer "preserve the confidences and secrets of a client” and the subjoined EC 4-5 and EC 4-6 are cited against Mr. Washburn’s conduct.[3] Canon 9 requires *209 that a lawyer avoid "even the appearance of professional impropriety” and cited here are EC 9-3 and DR 9-101.* *[4] The courts will not be indifferent to these strictures (Matter of Weinstock, 40 NY2d 1, 6). The salient facts are not disputed and are, indeed, in large part expressly conceded.
Thus, it is clear that the law firm of Hawkins, Delafield & Wood acted as bond counsel to defendant MAC during the period here in question, and that during that time Mr. Wash-burn was an associate of the firm. Mr. Washburn was assigned to, and did work on legal matters related to MAC’S and the city’s budget, borrowing and other fiscal matters, all in close association and consultation not merely with MAC’S officers and staff, but with the city’s officers and their respective legal staffs as well. The subjects of the communications and consultations to which Mr. Washburn was thus made privy, their confidentiality and their substantial relationship to the instant proceedings and motions are fully established by affidavit of a Hawkins, Delafield partner, Mr. Robinson, by affidavits of Assistant Corporation Counsel, Mr. Asen, Mr. Greilsheimer and Mr. Martin, by affidavit of a partner, Mr. Rifkind, of the firm which has continuously represented MAC, and by documentary evidence. None of these factual allegations is denied by Mr. Washburn, who, indeed, for the most part concedes them, and, as respects at least one critical specification hereinafter mentioned, admits the ethical breach while advancing a completely specious theory to explain it.
In opposing the cross motion to disqualify, movants first assert res judicata[5] as a bar, contending that the issue now presented by the cross motion was presented and was thereupon determined adversely to cross movants’ present contentions in the case of Washburn v Goldin, an article 78 proceeding in the nature of mandamus brought against the City *210 Comptroller by Mr. Washburn, as attorney in person and as attorney for his copetitioners, just seven days after his separation from Hawkins, Delafield.
The article 78 proceeding was brought on before Mr. Justice Helman and was dismissed in an opinion (NYLJ, Jan 6, 1977, p 10, cols 1-3). The court declined to pass on respondent’s motion to disqualify Mr. Washburn, made on the grounds now urged here, stating: "While the court is impressed with the strong challenge that has been made to the standing and qualification of petitioner as a litigant in this proceeding, I indicated on the oral argument of this application that the importance of the issues here presented required an adjudication on the merits.” The question then becomes: whether, despite the court’s explicit refusal to pass on the issue of disqualification, the legal effect of the court’s then proceeding to render a decision on the merits was to overrule the Comptroller’s objection to Mr. Washburn’s representation of the petitioners. Such was not the effect. (Marine Tr. Corp. v Switzerland Gen. Ins. Co., 263 NY 139, 147; City Bank Farmers Trust Co. v Macfadden, 13 AD2d 395, 400, 401, affd 12 NY2d 1035; 5 Weinstein-Korn-Miller, NY Civ Prac, pars 5011.24, 5011.25; 9 Carmody-Wait 2d, NY Prac, § 63:206). The proposed intervenors, in support of their claim of res judicata, cite but one authority, Watts v Swiss Bank Corp. (27 NY2d 270), which is not in point; the two cases relied on as establishing res judicata presenting one identical substantive issue —title to a bank account — while the cases here discussed present, as the supposed question previously adjudicated, merely the collateral, procedural issue of attorney representation, in no way affecting the merits of the mandamus sought in the prior proceeding or the intervention proposed in this.
The proposed intervenors assert, further, that an attorney-client relationship between the city and Mr. Washburn has not been established. A strong argument could doubtless be made against the acceptance of so narrow a construction of canon 4 in this case, where the close and indeed symbiotic relationship between the city and MAC, the actual client, quite naturally encouraged confidential discussions with Mr. Washburn and the exchange of confidential information which the city would not otherwise have imparted. But the more liberal construction is unnecessary inasmuch as the attorney-client relationship did exist, in any event, as between Mr. Washburn and MAC, a defendant here, which joins with the *211 city in urging disqualification. Accordingly, canon 4 is relevant. Clearly, too, canon 9 is applicable — this in the light of EC 9-3, the MAC retainer having constituted "public employment”, as Mr. Washburn upon the oral argument conceded; and in the light of DR 9-101, Mr. Washburn having in fact accepted private employment in matters in which he had substantial responsibiity while in the public employment.
That the canons were substantially breached by Mr. Wash-burn is abundantly clear. The general nature of the confidential information imparted to him has been outlined, and its pertinence to the varied litigation thereafter undertaken by him has been established. That he had access to files and confidential material generally is also evident. For obvious reasons, the record in cases such as this will not disclose the specifics of the assertedly confidential information imparted, with the result of destroying the very confidentiality sought to be preserved. The test is simply "whether it can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject of his subsequent representation” (T. C. Theatre Corp. v Warner Bros. Pictures, 113 F Supp 265, 269, cited and approved in Emle Ind. v Patentex, Inc., 478 F2d 562, 571, applying canon 4). Upon the facts and under the authorities, the duty of the court to disqualify the attorney is clear.
The Appellate Division has recently addressed the issue upon facts somewhat more favorable to the attorney than those now before this court. There, the attorney had been retained by the defendant’s carrier in a malpractice action and had participated in certain preliminary procedures, but shortly thereafter became employed by the firm representing the plaintiff. The carrier was apprised and had no objection, it being made clear that the attorney would have no further connection with the suit. A codefendant objected, however, and his objection was sustained, the court, by Mr. Justice Steuer, stating: "While [the] facts neither indicate nor imply any departure from professional conduct or breach of any ethical canon, we cannot escape the conclusion that this is a situation rife with the possibility of discredit to the Bar and the administration of justice. Obviously Mr. Turkewitz cannot erase from his mind the confidences he received from his former client or the plan of defense he envisaged. Though we do not dispute his good faith or the good faith of the firm representing plaintiff, both the possibility of conflict of inter *212 est and the appearance of it are too strong to ignore. * * * While [disqualification] would deprive [plaintiff] of counsel of his original choice, it does not differ from any other situation where a conflict prevents a client from proceeding through a particular attorney.” (Rotante v Lawrence Hosp., 46 AD2d 199, 200.) In the instant case, Mr. Washburn, upon withdrawal from the firm, did not, in the example of Mr. Turkewitz, isolate himself from any litigation involving MAC. On the contrary, he commenced suit against the Comptroller only seven days later upon fiscal issues covered in the course of the MAC retainer and consultations, as to which, indeed — this according to his oral argument here[6] — there had been disagreement among the consultants; and thereafter, as attorney for others, repeatedly applied, by successive motions, to intervene in this action to which MAC is a party (cf. canon 4). The asserted violation of canon 4 has been established.
It is equally clear that Mr. Washburn’s representation of the movants offends canon 9 interdicting "even the appearance of professional impropriety”, and, in particular, EC 9-3 and DR 9-101 (B) dealing with an attorney’s acceptance of private employment involving matters related to his prior public employment. The underlying rule and the reasons for it were well discussed in Handelman v Weiss (368 F Supp 258). There being some question as to whether the attorney there involved had, technically, been in public employment, the court did not apply canon 9 but acted pursuant to its "general supervisory powers” (p 263), and found that disqualification was required "for many of the same considerations which necessitated the ABA’s adoption of Canon 9” (p 263). In the case at bar, Mr. Washburn, upon the oral argument, quite correctly conceded that he had, indeed, been in "public employment”. That being so, the canon was breached, under the authorities hereinbefore cited. Mr. Washburn said, however, that he would decline compensation in this litigation, should the court so direct, and that he considered that if he should indeed render gratuitous services, the effect would be to "neutralize” the asserted breach. In a postargument brief, Mr. Washburn specifically waives compensation and asserts that he is motivated solely by the public interest. But motive— whether vengeful in one case or altruistic in another — is not the test. Neither can it be concluded that the receipt of compensation is a determinative test of ethical behavior or *213 that a demonstrated violation of the code is something less than that if unrewarded by monetary compensation.
Cross motion granted.

. At the time of the Court of Appeals remittitur to this court, the notes aggregated $983.8 million, of which approximately $400 million were later exchanged for MAC bonds. As against the resulting balance of approximately $583 million of unpaid notes, the court has received through June 10, 1977 some 13,993 noteholders’ applications for judgments to a total of $569 million. As of June 10, 1977, also, some 11,561 judgments aggregating $442.9 million have been entered, and $214.4 million thereof have been paid; and payments continue, in accordance with the schedule fixed by this court, at the rate of about $7.7 million per day.

. As to res judicata, citing Marine Tr. Corp. v Switzerland Gen. Ins. Co. (263 NY 139, 147) and 9 Carmody-Wait 2d, NY Prac, § 63:206; as to attorney-client relationship, citing Handelman v Weiss (368 F Supp 258).

. "EC 4-5. A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client and a lawyer should not use, except with the consent of his client after full disclosure, such information for his own purposes.”
*209 "EC 4-6. The obligation of a lawyer to preserve the confidences and secrets of his client continues after the termination of his employment.”

. "EC 9-3. After a lawyer leaves judicial office or other public employment, he should not accept employment in connection with any matter in which he had substantial responsibility prior to his leaving, since to accept employment would give the appearance of impropriety even if none exists.”
"DR 9-101. * * * (B) A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.”

. Comptroller Goldin is the only party appearing in both cases, but in the circumstances of this motion the distinctions and variant rules as between res judicata and collateral estoppel are not important.

. The oral argument has been transcribed and the transcript will be filed herewith.