In the Matter of HENRY HOF, JR., Deceased. IRIS HOF, as Administratrix of the Estate of HENRY HOF, JR., Deceased, Appellant; PHILIP M. HOF et al., Respondents.

Second Department, July 9, 1984

*Martin Rosen* for appellant.

*Frank Barnett,* respondent *pro se.*

**OPINION OF THE COURT**

TITONE, J. P.

This appeal involves an application by the administratrix of an estate to disqualify the attorney for her coadministrator. The attorney had previously represented both parties, but was dismissed by petitioner when he allegedly participated in the prosecution of a compulsory accounting proceeding seeking to surcharge her. The Surrogate of Queens County held, without an evidentiary hearing, that petitioner's allegations of a conflict of interest and her claim that the attorney would be required to testify at the accounting proceeding were insufficient to warrant disqualification. We disagree and reverse.

Decedent, Henry Hof, Jr., died on March 28, 1979. On May 29, 1979, the respondent Frank Barnett, acting as attorney for the estate, filed a petition for letters of administration on behalf of Henry's widow, and Philip Hof, a son by a prior marriage. Barnett had previously elicited information from Mrs. Hof, and others, concerning the assets of the estate, which consisted primarily of real property.

In a letter addressed to all the distributees, Barnett indicated that there were several outstanding judgments against the decedent and that the properties were also encumbered by tax and mortgage liens. The letter also suggested a possible sale of some of these properties in order to satisfy the debts of the estate. Subsequently, Mrs. Hof and her personal attorney wrote letters to Barnett demanding disclosure of the progress and status of administration of the estate. Apparently, none of these demands were answered although some property had, in fact, been sold. Mrs. Hof contends that these sales were consummated without her approval or signature, as required.

In October, 1982, Philip commenced a proceeding to compel Mrs. Hof to account. She contends that that accounting proceeding, whose aim is to surcharge her, was in fact engineered by Barnett in conflict with his fiduciary duty as her counsel, noting that an order in that proceeding was served upon her in an envelope bearing Barnett's name. Barnett is completely silent in response to these allegations.

Consequently, Mrs. Hof discharged Barnett from further representation of her as administratrix of the estate and commenced this proceeding against Barnett and Philip seeking the former's disqualification from further representation of the latter in the affairs of the estate. In her petition, she alleges, among other things, that Barnett froze her out of participation in the settlement of the estate and that he sold assets of the estate without her knowledge or consent. She further contends that by virtue of his status as the sole counsel for the estate during the period in question, his testimony will necessarily be required in the accounting proceedings. Barnett, in his answer, denied the allegations that he froze out appellant or that sales were

conducted without her consent. Philip has not appeared in this proceeding.

As a general rule, where an attorney represents multiple clients and a situation arises posing a potential conflict between them in connection with his representation, he may not undertake the representation of either against the other unless it is shown either that no actual conflict exists or that such continued involvement is with the full consent of all parties upon complete disclosure (*Matter of Kelly,* 23 NY2d 368, 376; *Schmidt v Magnetic Head Corp.,* 101 AD2d 268; see, also, Propriety and Effect of Attorney Representing Interest Adverse to That of Former Client, Ann., 52 ALR2d 1243, 1268-1276). While it is true that an attorney represents the administrators individually and not the estate itself (*Matter of Scanlon,* 2 Misc 2d 65, 69, citing *Matter of Schrauth,* 249 App Div 847) and that cofiduciaries may retain independent counsel (*Matter of Hollinger,* 93 Misc 2d 926, 932), Barnett's involvement in the present proceedings should not be permitted, given their adversarial nature.

*Matter of Dix* (11 AD2d 555), upon which the Surrogate posited his determination, is plainly distinguishable. That case involved dual representation in a probate proceeding. The party seeking disqualification, the decedent's widow, Mrs. Dix, had originally joined in seeking probate of the will as a coexecutrix, then withdrew as a copetitioner and contested probate, and, at the time of her motion to disqualify the attorney who had represented her and the other named executor as copetitioners, had retreated to a neutral stance. At that point, there was no representation of a conflicting interest or potential for use of confidential information. The Appellate Division, Third Department, noted (11 AD2d 555, 555-556) that: "The fact that after the retention of the attorneys Mrs. Dix decided to change her status in these proceedings does not, *ipso facto,* make the attorneys adverse to her voluntary shifting of positions. Mrs. Dix and [the named coexecutor] consulted the attorneys for their mutual benefit as prospective coexecutors and it is difficult to visualize what could possibly have transpired between the parties to create a confidential relationship, one to the other, sufficient in character to call

upon the attorneys now to withdraw because of such relationship. We are unable to say that there is any conflict of interest or any confidential relationships which prevent the said attorneys, appointed by the temporary administrator, from continuing to act in that capacity."

We think that different considerations pertain in accounting proceedings where, as a result of the prior dual representation, confidences have developed leading inevitably to the possibility of conflict. Since there is an allegation that Mrs. Hof breached her fiduciary duties, it is manifest that Barnett's prior representation of her may well have been the source of information substantiating this claimed breach.

In addition, this is not an instance in which a disqualification motion is being made for tactical purposes (cf. *Lopez v Precision Papers,* 99 AD2d 507; *Schmidt v Magnetic Head Corp.,* 97 AD2d 151, 163). Involved is the obtaining of confidential information from a former client which will be used against that former client. In such circumstances all that is required for disqualification is the adduction of facts "which would make it reasonable to infer that [the attorney] gained some information about his former client of some value to his present client" (see *Silver Chrysler Plymouth v Chrysler Motors Corp.,* 370 F Supp 581, 589, affd 518 F2d 751; *Colonie Hill v Duffy,* 86 AD2d 645, 646; see, also, *Hempstead Bank v Reliance Mtge. Corp.,* 81 AD2d 906; *North Shore Neurosurgical Group v Leivy,* 72 AD2d 598).

Barnett's reliance upon the holding in *Greene v Greene* (47 NY2d 447, 453), that petitioner must show a "reasonable probability of disclosure" of confidences, is unavailing. The "reasonable probability" here is apparent from the situation itself (*Colonie Hill v Duffy, supra*). Moreover, in *Greene,* the court expressly reaffirmed its statement in *Cardinale v Golinello* (43 NY2d 288, 295) that it is "no answer that the lawyer did not in fact obtain any confidential information". Clearly, petitioner need not set forth specifics to substantiate a claim of breach of the confidential attorney-client relationship as to do so would obviate the protection afforded by disqualification (*Flushing Nat. Bank v Municipal Assistance Corp.,* 90 Misc 2d 204, 211; cf. *Lopez v Precision Papers, supra*).

The critical issue here, moreover, is not the actual or probable betrayal of confidences, but the mere appearance of impropriety and conflict of interest (Code of Professional Responsibility, Canon 9). As the Court of Appeals stated in *Cardinale v Golinello* (*supra,* pp 295-296): "The proscription against taking a case against a former client is predicated, however, on more than the possibility of use in the second representation of information confidentially obtained from the former client in the first representation. The limitation arises simply from the fact that the lawyer, or the firm with which he was then associated, represented the former client in matters related to the subject matter of the second representation. Accordingly, it is no answer that the lawyer did not in fact obtain any confidential information in connection with the first employment * * * Irrespective of any actual detriment, the first client is entitled to freedom from apprehension and to certainty that his interests will not be prejudiced in consequence of representation of the opposing litigant by the client's former attorney".

Indeed, the mere access to the files concerning a contested matter has been held sufficient for disqualification (*Matter of Washburn v Goldin,* 59 AD2d 682; *Flushing Nat. Bank v Municipal Assistance Corp.,* 90 Misc 2d 204, *supra*). It is the rare case where an attorney may place himself in a position where a potential conflicting interest may, even inadvertently, affect or create the appearance of affecting his professional judgment or duty of undivided loyalty to his clients (*Matter of Kelly,* 23 NY2d 368, *supra; Schmidt v Magnetic Head Corp.,* 101 AD2d 268, *supra*). Moreover, this duty of undivided loyalty survives the termination of employment (Code of Professional Responsibility, DR 4-101 [B]); cf. *People v Shinkle,* 51 NY2d 417; *People v Zimmer,* 51 NY2d 390).

Often disqualification petitions require some showing of probable breach of confidentiality due to the presence of a significant issue of denial of the counsel of choice to a litigant (*Greene v Greene, supra,* p 453). Here, however, Philip has not appeared in connection with this petition and the record is devoid of any indication that he supports Barnett's position or actively takes an interest in the final

determination of this appeal (cf. *Matter of Harley v Ziems,* 98 AD2d 720).

The disciplinary rules and ethical considerations set down in the Code of Professional Responsibility are also pertinent. Although the provisions of the code do not enjoy the status of statutory or decisional law, they do represent the acknowledged standards of the profession and the courts "should not denigrate them by indifference" (*Matter of Weinstock,* 40 NY2d 1, 6). Under DR 2-110 (B) and DR 5-105, an attorney must withdraw from a case when it becomes apparent that he can no longer serve his client with undivided loyalty. As noted previously, this obligation survives the term of employment itself and extends to all matters substantially related to the prior representation (Code of Professional Responsibility, DR 4-101 [B]). Furthermore, the ethical considerations of avoidance of any possible dilution of the independent judgment and undivided loyalty of the attorney (Code of Professional Responsibility, EC 5-14) and the attorney's duty to preserve the interests of his former clients (Code of Professional Responsibility, EC 4-6) are of particular importance here.

While the provisions of the Code of Professional Responsibility do not directly cover the situation *sub judice,* they are highly suggestive of the course of conduct expected in such situations. Significantly, the Committee on Professional Ethics of the New York State Bar Association concluded that an attorney for two coexecutors may not represent either of them in an accounting or other adversarial proceeding against the other and any departure from neutrality would require his withdrawal from further representation in connection with the estate (NY State Bar Assn, Committee on Professional Ethics, opn No. 512). Pertinent is the committee's observation that "Canon 9 effectively condemns any species of turncoat representation" (*ibid.*).

It is an undeniable maxim of the legal profession that an attorney must avoid even the appearance of impropriety (*Cardinale v Golinello,* 43 NY2d 288, *supra; Rotante v Lawrence Hosp.,* 46 AD2d 199; Code of Professional Responsibility, Canon 9). Where an allegation of impropriety

precedes a decision on the merits, the courts are justifiably more sensitive to such appearances (*Magjuka v Greenberger,* 46 AD2d 867) and doubts as to the existence of a conflict of interest are to be resolved in favor of disqualification (*Narel Apparel v American Utex Int.,* 92 AD2d 913, 914).

Finally, the House of Delegates of the American Bar Association recognized the significance of appearances of impropriety and the lapse of clear coverage in the Code of Professional Responsibility in connection with multiple and former client situations. As a result, they adopted Rule 1.9 (a) in the new Model Code of Professional Responsibility (adopted Aug. 2, 1983 at the ABA convention) which states in relevant part that: "[a] lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation". In the official comment to Rule 1.9, it is noted that this provision was designed to provide a firm ground for decisions which previously had been premised on the injunction in Canon 9 to avoid even the appearance of impropriety.

Petitioner's contentions that Barnett excluded her from participation in the affairs of the estate, and that he sold estate assets without her knowledge or approval, cannot be lightly dismissed. In addition, the fact that during the period prior to the institution of the accounting proceeding he was the sole counsel for the estate, and was thus privy to all actions taken in pursuance of its settlement, indicates that his testimony will be required at the accounting (cf. *Jacobson v Van Rhyn,* 98 AD2d 764; *Tucker v Weissman,* 89 AD2d 852). Further representation of Philip Hof could tend to taint that testimony and further the appearance of impropriety. Finally, Barnett's continued representation under the circumstances would tend to inflame the atmosphere of distrust extant between the coadministrators, impede the cooperation between their counsel and the free flow of information between them, resulting in the prolongation of the final settlement of the estate to the detriment of all the distributees.

For the reasons stated, the order appealed from should be reversed, on the law and in the exercise of discretion, and the application to disqualify Barnett from representing Philip Hof in the accounting proceeding should be granted, with costs.

GIBBONS, O'CONNOR and RUBIN, JJ., concur.

Order of the Surrogate's Court, Queens County, dated May 31, 1983, reversed, on the law and in the exercise of discretion, and the application to disqualify Frank Barnett from representing Philip Hof in the accounting proceeding granted, with costs payable personally by respondent Barnett.