OPINION OF THE COURT
Lee L. Holzman, J.
In this accounting proceeding, objections were filed by one of the decedent’s two sons. The sons share equally in the residuary estate.
The objections to executors’ commissions and legal fees raise significant questions which no reported case has fully an *1046 swered. The issues presented arise from a situation where an attorney-draftsman and his partner petitioned in the probate proceeding to be appointed coexecutors, no objections to their serving in that capacity were filed in the probate proceeding and they continued to serve as coexecutors without objection until the final accounting, at which time objections are raised to their request for two full executors’ commissions as well as attorneys’ fees. The result hinges on the applicability of Matter of Weinstock (40 NY2d 1), Matter of Laflin (111 AD2d 924), and Matter of Harris (123 Misc 2d 247) to the facts of this case.
Decedent died on February 19, 1985 when he was in his early nineties. The will was executed on June 14, 1983. Salvatore J. Milano, a lawyer who had represented the decedent, was nominated as the primary executor. The attorneys who are the accountants in this proceeding were named alternate coexecutors. The will was admitted to probate on the waivers and consents of both of decedent’s sons. The primary executor renounced and both of the alternates, who are the sole partners of their law firm, qualified as coexecutors of the estate. These attorneys have served as coexecutors from the inception of the estate and have performed all of the legal services in the probate, tax and accounting proceedings.
The proof at the hearing consisted entirely of the testimony of the attorney-draftsman-coexecutor who appears to have performed the lion’s share of the executorial and legal services for the estate. This witness testified, without objection, to the circumstances surrounding the drafting and execution of the will. He admitted that he had broached the subject of the appointment of an alternate executor in the event that Mr. Milano should, for any reason, be unable to serve. However, he contended that it was the decedent’s idea that both the witness and his partner should be named as alternate coexecutors. He further claimed that he had advised the decedent that two commissions would be payable in the event that both he and his partner served. His recollection of this conversation, which occurred approximately five years ago, was that decedent responded to the effect that he liked both the attorneys and wanted them both to serve anyway. He inquired about the assets but decedent refused to reveal the size of his estate and, in effect, told him that it was none of his business. The account reflects that the commissionable assets total $147,289, which results in each coexecutor receiving statutory commissions in the sum of $6,891, making their combined *1047 commissions the sum of $13,782. In addition, their firm originally requested $11,018 in legal fees. At the hearing, counsel said that he had spent 20 hours on this estate since the account was filed and that he should receive additional compensation for this time.
Counsel stated that he kept no contemporaneous time records but he claimed that he could reconstruct the amount of time spent on various items with a high degree of accuracy by looking at his file. On this basis, he claimed that he had spent almost $15,000 worth of billable time on this estate, billing his time at $150 per hour, and that $11,018 is a reduced charge. He alleged that, for the past decade, he has been charging at the same rate. His testimony on this subject was surprising to the extent that he indicated that he was able to keep his charges constant over the past 10 years. He is apparently one of the fortunate few who has escaped the impact of inflation upon office overhead.
Although not claiming to be an expert in estate law, counsel stated that he had been in practice for 30 years and had handled 4 or 5 estates a year. However, he testified that, in his opinion, regardless of the size of the estate, he and his partner would both be entitled to full statutory commissions. This opinion is incorrect (see, SCPA 2307 [5]). It was also clear that he was unaware of the holdings in Matter of Weinstock (supra), Matter of Laflin (supra) and Matter of Harris (supra) prior to the instant proceeding.
Counsel’s lack of expertise was also exhibited by his entry in schedule C indicating that he had, without a court order, paid himself $2,235 on account of commissions. This was improper (SCPA 2307; Matter of Crippen, 32 Misc 2d 1019). If the executors wanted to receive a payment on account of commissions, they should have made an appropriate application (see, SCPA 2310, 2311). Inasmuch as the attorneys and the fiduciaries were one and the same in this matter, even if petitioners had denominated the payment as being made on account of legal fees, a court order was required (SCPA 2111).
It might be harsh to conclude that counsel intentionally misstated the facts which led to the nomination of both himself and his partner as alternate executors in the will. However, the court would have to be gullible not to conclude that counsel, at least subconsciously, engaged in revisionary history when he implied that decedent knew that his estate would have to pay twice as much in commissions in the event *1048 that both partners in the law firm served as executors. Counsel’s apparent lack of knowledge about the holding in Matter of Weinstock (supra) indicates that he did not know that an attorney had an obligation to make a full disclosure to a client before he permitted himself and another attorney in his firm to be written into the will as coexecutors. Moreover, counsel conceded that he did not have even an inkling as to the size of decedent’s estate and that, even if he had, he was unaware that the commissions would be doubled only if the estate reached a certain value. If petitioners’ present re'quest for legal fees and commissions were to be granted, they would receive in excess of $25,000. Assuming that decedent was aware of these charges as well as other administration expenses and debts would lead to the conclusion that he sanctioned a distribution of his estate which leaves each of his sons approximately $21,000 in satisfaction of his residuary legacy while counsel receives $25,000. This is incredible. In viewing the credible testimony in the light most favorable to counsel, it is concluded that, after counsel had initiated the discussion as to the need to nominate an alternate executor, decedent, without any improper prompting from counsel, but also without any meaningful knowledge or disclosure as to the financial impact upon his estate, selected counsel and his partner as the alternate coexecutors.
The implications which can be drawn from the holdings in Matter of Weinstock (40 NY2d 1, supra), Matter of Laflin (111 AD2d 924, supra) and Matter of Harris (123 Misc 2d 247, supra) can be used as a guide in determining the instant matter. Matter of Weinstock (supra), at the very least, stands for the proposition that, where an attorney-draftsman and a partner are named in a will as executors, without having had any prior relationship to the client and without having advised the client that double commissions are payable, they may be barred from serving because the overreaching is held to constitute constructive fraud. Inasmuch as Weinstock involved a father and son team of attorneys unknown to the elderly testator prior to the will conference and execution ceremony, the overreaching was particularly egregious. In the instant case, the uncontroverted testimony was that the attorneys had had some dealings with the decedent for a few years prior to his death and that it was not unreasonable that he would appoint one of them as an alternate executor of his estate. The decedent apparently did not wish to appoint a member of his family. However, it is highly suspect that both *1049 attorneys were named. Counsel candidly admitted that there was no conceivable benefit to the estate by so doing, and decedent’s desire to benefit the attorneys was obviously not paramount since they would receive nothing in the event that the primary executor served.
Another factor distinguishing this case from Weinstock (supra) is that there is no evidence that the attorneys actively induced the decedent to name both of them as fiduciaries or that they purposely deceived the decedent into believing that it would make no difference whether one or both members of the firm were named. However, it is equally clear that there was no meaningful, full disclosure as to the double commissions that would flow from multiple fiduciaries serving. Consequently, the client was deceived.
At least one court has been of the opinion that the Code of Professional Responsibility requirement that "[a] lawyer should not consciously influence a client to name him as executor” (Code of Professional Responsibility EC 5-6) can only be satisfied by the maker of the will executing an affidavit which would reflect, inter alia, full knowledge as to the attorney-fiduciary’s right to commissions and counsel fees as well as the right of the fiduciaries to double commissions where the attorney is serving as a coexecutor (Matter of Gillett, 139 Misc 2d 188). Without endorsing this rule, and with knowledge that the Weinstock court stated that the mere naming of one attorney as the fiduciary does not of itself constitute overreaching, one cannot reasonably contest that such disclosures in some manner should be made to the client. The existence of such an affidavit or similar statements in the will would clearly serve as a preventive measure to avoid future problems for counsel. Where two attorneys from the same firm are nominated as coexecutors, they should be able to present compelling proof that the client made this selection with full knowledge as to its ramifications.
Since no objections were filed in the probate proceeding to the assumption of the role of coexecutors by the attorney-draftsman and his partner, the court does not have to consider whether such objections would have resulted in one or both of the attorneys being denied the right to serve as an executor. However, counsel conceded that he had not advised the beneficiaries of the estate that double commissions would be charged when he and his partner qualified as alternate executors. Consequently, his reliance on their waivers in the probate proceeding, when it appears that they were not repre *1050 sented by independent counsel, is unfounded and cannot be the basis upon which to hold that decedent’s son is estopped from raising the objections he now pursues in the accounting proceeding.
The court finds that counsel was guilty of passive malpractice in his failure to adequately advise the decedent of the consequences of appointing both attorneys as executors. Matter of Laflin (111 AD2d 924, supra) and Matter of Harris (123 Misc 2d 247, supra) at least imply if not hold that, in the absence of an estoppel, multiple attorney-fiduciaries who have not complied with the Canons of Ethics by making a full disclosure must suffer the consequences in the accounting proceeding, even though no objections to their serving were raised in the probate proceeding.
The appointment of two or more members from the same law firm as coexecutors in double commission cases, in almost every instance, can only be the product of gratitude, greed or ignorance. If it flows from gratitude and the client was fully apprised of the ramifications, the attorneys undoubtedly earned the gratitude of their client and they are entitled to the applicable commissions and counsel fees. If it flows from greed, as appears to have been the case in Matter of Weinstock (40 NY2d 1, supra), it might not be too harsh to hold that the greedy should receive nothing for their legal and executorial services, even though no objection was raised until the accounting proceeding. However, where, as in the case at bar, it is a product of the general practitioner’s failure to keep abreast of the changing responsibilities of an attorney, a more limited sanction appears appropriate. A remedy that will not reward counsel for his ignorance but will also not result in a windfall to the beneficiaries of the estate.
Statutory commissiqns should be denied to those who are guilty of serious misconduct, breach of trust, or mismanagement (Matter of Smith, 91 AD2d 789; Matter of Schaich, 55 AD2d 914, lv denied 42 NY2d 802). In this case, it is clear that counsel’s failure to adequately explain to the testator the impact upon his estate in the event that both partners served as coexecutors should bar the coexecutors from receiving two statutory commissions. The next question is whether the two executors should automatically be permitted to share in one statutory commission and receive the customary legal fee. If they do, they would be receiving exactly the same amount as they would have had they acted in accordance with the highest standards of the legal profession and either discour *1051 aged the decedent from appointing both of them as executors or had only one of them served. This result does not commend itself to the court. Accordingly, it is concluded that the proper remedy is to allow combined executors’ commissions and attorneys’ fees on a quantum meruit basis. The amount to be awarded should in no event exceed one commission and the legal fee that would be allowed, taking into consideration that there is an overlapping of executorial and legal services which results in a reduction of the legal fee where counsel is also the executor (Matter of Moore, 139 Misc 2d 26; Estate of Schilling, NYLJ, May 10, 1988, at 17, col 4; Estate of Ketcham, NYLJ, Mar. 25, 1988, at 31, col 4; Matter of Gillett, 139 Misc 2d 188, supra [$170,000 estate, commissions of $7,821.26 and counsel fee of $1,500 allowed]; Estate of Sherwood, NYLJ, May 19, 1988, at 15, col 5 [$60,000 estate, commissions of $3,045.19 and counsel fee of $750 allowed]; Estate of Smith, NYLJ, Mar. 3, 1988, at 15, col 5; Will of Deguire, NYLJ, July 23, 1987, at 16, col 4; In re Estate of Orza, NYLJ, Sept. 18, 1981, at 6, col 5).
The factors to be considered in the fixation of a legal fee are well established (Matter of Freeman, 34 NY2d 1, 9; Matter of Potts, 213 App Div 59, affd 241 NY 593). Here, as a discussion of the remaining objections shall demonstrate, the legal services required were more than routine but do not come close to rising to the level of being complex. Similarly, although the legal services rendered cannot be classified as inadequate, they fall far short of exhibiting any great expertise. Counsel pursued the problems of the estate to a point and, then, essentially, opted for the easiest way to resolve the issue. To the extent that time is a significant factor, the court does not have the confidence that counsel had that he could accurately recall the time spent without the aid of contemporaneously kept records. Counsel claimed he had rendered 100 hours of services prior to filing the account. Counsel cannot be compensated for any services rendered thereafter since most of the time spent after the account was filed was expended in justifying the unjustifiable fees and commissions sought in this estate. Such services may not be compensated from estate assets (Matter of Newhoff, 107 AD2d 417, 423, and cases cited therein). It appears that counsel performed or should have been able to perform the preaccounting services listed in his affidavit in at least 20% less time. Moreover, approximately half of the time appears to have been spent on services which are executorial in nature and for which one cannot be compensated at the same rate as for legal services (Matter of *1052 Gates, 120 AD2d 890; Matter of Burroughs, 155 Misc 237, 239). To the extent that the executor testified that he spent hours searching for and reviewing bank statements, these duties were clearly executorial rather than legal. The preparation of fiduciary income tax returns is arguably either executorial or legal or perhaps a mixture of both. In any event, these do not appear to be the type of services which would warrant paying $150 an hour. This is especially true with regard to decedent’s 1984 income tax return in which the total income reported was under the sum of $8,000.
Considering all of the relevant factors in fixing attorneys’ fees and a quantum meruit fixation of executorial services, it is determined that petitioners should be awarded a total of $8,000 in executors’ commissions and legal fees. In fixing this compensation, the court has already reduced the amount by the appropriate surcharge for counsel’s having taken $2,235 in commissions without a court order, the appropriate surcharge being the amount of interest lost (Matter of Crippen, supra). Inasmuch as counsel has already received $2,235, they are only entitled to receive an additional $5,765 for their services as attorneys and executors in this estate. Accordingly, the objections to schedule C-l and schedule I are sustained to the extent indicated above.
[Portions of opinion omitted for purposes of publication.]