OPINION OF THE COURT
Ernest L. Signorelli, S.
In this probate proceeding, a Putnam/Weinstock hearing *743 was conducted by the court, to determine whether a bequest to a member of the law firm who drafted the documents offered for probate, and the nomination therein of a former member of that firm as a coexecutor, were procured by fraud and undue influence.
The decedent died on December 1, 1986, survived by her spouse, her sole distributee, and leaving an estate valued in excess of $10 million. Pursuant to the pertinent provisions of her purported will, dated September 17, 1973, the decedent bequeathed to the attorney-draftsman a general legacy of $500,000, and nominated and appointed a senior partner of the attorney-draftsman, together with a corporate fiduciary, as the coexecutors to act thereunder.
In March 1967 the decedent was referred by a mutual friend to the said senior partner, the attorney-cofiduciary herein. However, over the years and until the time of the decedent’s demise in December 1986, the attorney-beneficiary, a member of the said law firm, was delegated to perform, and, did, indeed, perform most of the professional services on her behalf. These services related to the purchase of properties in Southampton and in Manhattan from her prior husband’s estate, and the preparation and execution of several wills and a codicil. As a consequence thereof, the attorney-beneficiary and the decedent developed a personal and social relationship with each other over a period of 19 years from March 1967 to the date of the decedent’s demise on December 1, 1986. He described the decedent as a person possessing a strong will, who was sophisticated and knowledgeable in business and financial matters.
During her lifetime, the decedent executed five wills and a codicil. The decedent’s first will, which was drafted by another law firm, left her entire estate to her predeceased husband. The law firm herein was involved in the drafting of the four subsequent wills and a codicil.
In the second through the fifth wills, the decedent nominated the senior partner of the said law firm to be a cofiduciary of her estate. Notably, the attorney-cofiduciary stated that when the decedent agreed to nominate him as a fiduciary, he then suggested to her that she nominate the Morgan Guaranty Trust Company as a cofiduciary, presumably because the said bank was involved in the handling of her financial affairs. Insofar as the dispositive provisions of these instruments are concerned, in her second and third wills, the decedent left her *744 entire estate to her financial advisor and his spouse, neither of whom was affiliated with the said law firm. In her fourth will, the decedent bequeathed the sum of $250,000 to a member of the said firm, the draftsman thereof, which bequest was subsequently increased by her to $500,000 in her fifth will. In this latter instrument, the decedent eliminated the bequest to her business advisor, and his spouse. In none of the conferences held with respect to these instruments did the attorney-draftsman-beneficiary or the attorney-cofiduciary insist and urge the decedent to seek independent counsel for purposes of their preparation and execution. Additionally, they failed to inform her of the financial impact occasioned by the nomination of counsel as a cofiduciary, i.e., that the estate would be obligated to pay full multiple commissions, and that the said law firm, in addition to receiving executor’s commissions, would also be entitled to receive legal fees.
The long-standing decision in Matter of Putnam (257 NY 140, 143 [1931]) gave the following advice to the Bar: "Attorneys for clients who intend to leave them or their families a bequest would do well to have the will drawn by some other lawyer. Any suspicion which may arise of improper influence used under the cover of the confidential relationship may thus be avoided. The law, recognizing the delicacy of the situation, requires the lawyer who drafts himself a bequest to explain the circumstances and to show in the first instance that the gift was freely and willingly made. * * * In the absence of any explanation a jury may be justified in drawing the inference of undue influence, although the burden of proving it never shifts from the contestant.” (Emphasis supplied.)
In conformity therewith, the New York Code of Professional Responsibility and the American Bar Association’s Model Rules of Professional Conduct (1983) appropriately provide as follows: "EC 5-5. A lawyer should not suggest to his client that a gift be made to himself or for his benefit. If a lawyer accepts a gift from his client, he is peculiarly susceptible to the charge that he unduly influenced or over-reached the client. If a client voluntarily offers to make a gift to his lawyer, the lawyer may accept the gift, but before doing so, he should urge that his client secure disinterested advice from an independent, competent person who is cognizant of all the circumstances. Other than in exceptional circumstances, a lawyer should insist that an instrument in which his client desires to name him beneficially be prepared by another lawyer selected by the client." (Emphasis supplied.) ABA Model Rule 1.8: "(c) A *745 lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee.” (Emphasis supplied.)
In Matter of Weinstock (40 NY2d 1 [1976]), the Court of Appeals refused to grant letters testamentary to the attorney-draftsmen, finding that their nominations were the result of impropriety and overreaching on the part of the said attorneys. The court went on to say: "In consequence of their engagement as the decedent’s attorneys, there unquestionably came into being a confidential relationship which imposed on the attorneys a special obligation both of full disclosure and fair dealing. These attorneys failed in their obligations in these regards to such an extent that the Surrogate found them guilty of constructive fraud.” (40 NY2d, supra, at 5-6 [emphasis supplied].)
In the State of New York, it is appropriately provided in Code of Professional Responsibility EC 5-6 as follows: "A lawyer should not consciously influence a client to name him as executor, trustee, or lawyer in an instrument. In those cases where a client wishes to name his lawyer as such, care should be taken by the lawyer to avoid even the appearance of impropriety.”
Furthermore, the New York State Bar Association Committee on Professional Ethics, opinion 481, dated March 28, 1978, states in part as follows:
"There may be circumstances which can justify a lawyer’s conduct in offering his services as executor. Principally those circumstances must be such as support a firm conviction that the client would request his lawyer to serve in that capacity if he were aware of the lawyer’s willingness to accept the responsibility. Not only should the lawyer have enjoyed a long-standing relationship with the client, but it must also appear that the client is experiencing difficulty in selecting other persons qualified and competent to serve as executor.
"Where the client’s disposition is uncertain or he indicates even the slightest hesitancy to designate the lawyer as executor, the lawyer should immediately desist and expressly withdraw his suggestion. Under no circumstances, should the lawyer attempt to convince his client that he is well suited to perform the office of executor.”
Neither the courts, nor, certainly, the organized Bar, should *746 be indifferent to the foregoing standards of professional responsibility, notwithstanding the fact that they do not have the same status as a statute or a holding contained in a prior decision. (See, Matter of Weinstock, supra.)
In the case at bar, counsel, in drafting the propounded documents, ignored the strictures enunciated in the Putnam case (supra), as well as the standards of professional conduct promulgated by the State of New York and the American Bar Association. As a consequence thereof, the combined financial impact to this estate, valued at $10 million, conservatively amounts to the sum of $2 million, when one considers the $500,000 legacy to the attorney-draftsman, the executor’s commissions payable to his associate, and the legal fees which will, undoubtedly, be requested by their law firm.
Nevertheless, although there existed a lack of disclosure to the decedent of the said financial impact upon her estate, the court is constrained to sustain the legacy and the nomination of counsel as cofiduciary. This record amply establishes a longstanding professional relationship, between counsel and the decedent, as well as a relationship which involved close personal family ties. Moreover, it is significant to note that the courts, in the past, have been remiss in overlooking the type of conduct evidenced by counsel herein, and have neglected to take any affirmative steps to dissuade its continuation. Indeed, although estate beneficiaries fail to voice their opposition, as in the case at bar, it does not excuse the courts’ past indifference to the failure of counsel to conduct themselves in accordance with the Code of Professional Responsibility.
Obviously, had counsel comported themselves appropriately and adhered to the strictures contained in Putnam (supra) and the codes of professional responsibility, this extensive and costly Putnam/Weinstock hearing would have been obviated, and the expeditious resolution of this estate would have been made possible. It is only proper and equitable, therefore, that the cost of the estate occasioned by counsel’s failure to comply thereby should be borne by them, and not the beneficiaries of the estate.
The failure of some members of the Bar to comport themselves in the highest tradition of the legal profession has necessitated this court to promulgate the following local rule:
"In all probate proceedings, where the purported will and/ or codicil of the deceased nominates an attorney as a fiduciary or cofiduciary, there shall be annexed to the probate petition an affidavit of the testator setting forth the following:
*747 "(1) that the testator was advised that the nominated attorney may be entitled to a legal fee, as well as to the fiduciary commissions authorized by statute;
"(2) where the attorney is nominated to serve as a co-fiduciary, that the testator was apprised of the fact that multiple commissions may be due and payable out of the funds of the estate; and
"(3) the testator’s reasons for nominating the attorney to serve as fiduciary.
"Failure to submit an affidavit of this nature may warrant the scheduling of a hearing in order to determine whether the appointment of the attorney as fiduciary was procured by the exercise of fraud and/or undue influence upon the decedent.
"This rule is effective with respect to all wills and codicils executed after September 1,1988.”
Accordingly, the members of the Bar are strongly urged to heed the recommendation of the Court of Appeals in the Putnam case (supra), and to comply with the aforesaid standards of professional responsibility, as well as the foregoing local rule promulgated by this court. Failure to do so may result in the following: the invalidation of the nomination of the attorney-draftsman as a beneficiary and/or fiduciary, possible disciplinary action resulting from conduct in violation of the Code of Professional Responsibility, and counsel bearing the resulting costs to the estate occasioned by their impermissible conduct.
The court is satisfied that, at the time of the execution of the propounded documents, the decedent was competent to make a will and codicil thereto and was free from restraint. The genuineness of the purported will and the codicil thereto and the validity of their execution having been demonstrated to the court, the said documents are, accordingly, admitted to probate (SCPA 1408; EPTL 3-2.1).